326 S.W.3d 701 (2010)
Kelvin WASHINGTON, Appellant,
v.
The STATE of Texas, Appellee.
No. 01-10-00589-CR.
Court of Appeals of Texas, Houston (1st Dist.).
October 7, 2010.
Gail Kikawa McConnell, John J. Harrity III, Assistant District Attorneys, John F. Healey Jr., Fort Bend County District Attorneys Office, Richmond, TX, for Appellant.
Kent Schaffer, Steven J. Lieberman, Houston, TX, for Appellee.
Panel consists of Justices KEYES, HIGLEY, and BLAND.

OPINION
LAURA CARTER HIGLEY, Justice.
Appellant, Kelvin Washington, appeals the trial court's denial of his request for pretrial habeas corpus relief. See TEX. R.APP. P. 31. Appellant identifies three issues in which he contends that the State's prosecution of him violates his state and federal constitutional guarantees against double jeopardy.
We affirm.

Background
On January 8, 2007, four men broke into and stole merchandise from a jewelry store owned by Sohail Ahmed. Appellant was later charged with the offense of burglary related to the break in and theft.
*702 On July 13, 2010, a jury was impaneled to hear the burglary charge against appellant. The next day, each side made opening arguments, and the State presented its first witness.
Before the State's second witness testified, the following exchange occurred between the prosecutor and the trial court:
[Prosecutor:] May we approach, Your Honor?
(At the Bench, on the record)
THE COURT: Yes, ma'am.
[Prosecutor:] Judge, our victim is present in the courthouse but is apparently ill.
THE COURT: Who, Mr.
[Prosecutor:] Mr. Ahmed, our victim. I don't know, right now might be a good time to take our morning break so I can at least assess if he is in any position to maybe testify or what to do with that.
THE COURT: Do you know what his problem is?
[Prosecutor:] I'm not really sure. I was told they were getting him a Sprite. I do believe that it may be a stomach issue, but I don't know.
THE COURT: Well, okay. We'll take about a 15-minute recess and see what you can find out.
During the recess, the complaining witness, Mr. Ahmed, had a confrontation with the court's bailiff in the hallway. Mr. Ahmed became agitated and loudly made disparaging remarks about the bailiff, the prosecution, the defense attorneys, the defendant, and the judicial process generally.
After the recess, the defense moved the court to declare a mistrial based on Mr. Ahmed's outburst. The defense argued that appellant's right to a fair trial had been prejudiced because a number of jurors were in the hallway and had heard Mr. Ahmed's disparaging comments.
The trial judge stated on the record that he also had been in the hallway and had intervened to diffuse the situation. The judge agreed that some of the jurors had likely heard Mr. Ahmed's remarks. The court granted the motion for mistrial and reset trial for the following week.
After granting the mistrial, the trial court requested Mr. Ahmed to appear before it. Mr. Ahmed approached the bench and was placed under oath. The court verbally reprimanded Mr. Ahmed for his conduct and informed him that his outburst had caused the mistrial. In response, Mr. Ahmed explained that he had been feeling ill from food poisoning. He told the court that the burglary of his store had caused him financial ruin and great hardship for his family. He expressed that he was frustrated with the legal system because it had taken three years for the case to go to trial. Mr. Ahmed indicated that he had been called to the courthouse a number of times during that time to no avail.
In the end, Mr. Ahmed took responsibility for his improper conduct. He apologized to the court, explaining that his outburst had occurred "spur of the moment, it had no reference or context."
Five days later, appellant filed an application for writ of habeas corpus based on double jeopardy grounds. Appellant asserted that Mr. Ahmed's conduct, which necessitated the mistrial, could be imputed to the State.
To support his arguments, appellant alleged, in his verified habeas corpus application, that the prosecution had "engaged in communications, via post-it notes passed between themselves and the complainant [Mr. Ahmed] by way of an intern." Appellant claimed that "[t]he notes set out the complainant's health problems and his discomfort while sitting in the hallway, outside of the courtroom." He asserted that *703 "[t]he State was, effectively put on notice that the complainant was upset and disturbed to the point that he could cause a disruption of the trial proceedings." Appellant alleged, "With knowledge of the complainant's location and disturbed state of mind, the prosecution allowed the jury to walk directly in front of the enraged complainant." Appellant further argued,
The mistrial was caused by the prosecution's conscious disregard of a substantial risk that the complainant, whom the prosecution knew to be intensely angry and ill, would taint the jury. The complainant informed the prosecution by note that he was extremely upset at being summoned to court again and was not feeling well. Knowing the complainant was just outside the courtroom; the prosecution requested a recess and consciously disregarded the fact that the jury could hear the complainant's expletive filled statements about the Defendant, defense counsel, and the judicial system.
Appellant averred that, if the trial court did not find that the State acted with conscious disregard, then "the prosecutors are defacto agents for the complainant." Appellant argued that Mr. Ahmed's improper conduct, and the State's conscious disregard of Mr. Ahmed's conduct, "created a jeopardy bar" because such actions were prejudicial to him and were intended to provoke a mistrial. Appellant asserted that as a result of the State's and Mr. Ahmed's actions, he was "forced to move for a mistrial."
The State filed an answer to appellant's habeas application. In its answer, the State asserted that appellant's request for habeas relief was "frivolous and without legal support." The State also requested sanctions against appellant.
The trial court conducted a hearing on appellant's habeas application. Appellant argued that the prosecutor was an agent of the complainant, Mr. Ahmed. Appellant also reiterated that during trial, an intern had given the prosecutor a note stating that Mr. Ahmed was ill and "having problems." Immediately thereafter, the prosecutor had requested a recess to speak to Mr. Ahmed to determine whether he could testify. Appellant alleged that Mr. Ahmed was being accompanied by "a representative of the district attorney's office" prior to his outburst.
For these reasons, appellant intimated that the prosecution should have been aware that Mr. Ahmed was ill and agitated. Appellant argued that if the prosecutor had informed the trial court of "the potential problem," perhaps the court or the State could have taken steps to insulate the jury from his tirade.
Appellant argued that it was these actions, or inactions, by the State that required him to move for a mistrial. Appellant asserted that permitting the State's continued prosecution of him "would amount to double jeopardy."
The prosecution responded by pointing out that it does not represent the complainant, Mr. Ahmed; it represents the State of Texas. The prosecution asserted that appellant relied on an improper legal standard to impute responsibility for Mr. Ahmed's improper conduct to the State. The State explained, "For prosecutorial misconduct to occur, you must show that the prosecutor intentionally engaged in such outrageous conduct that his only purpose was to get a mistrial. That's what they have to show. There is no indication whatsoever that ever even occurred in [sic] here."
To support his habeas application, appellant offered the portion of the trial transcript related to his motion for mistrial. At the habeas hearing, the trial court also *704 took judicial notice of its knowledge of the trial proceedings related to the motion for mistrial.
After considering the application on its merits, the trial court denied appellant's request for habeas relief. In rejecting appellant's double jeopardy claim, the trial court orally found that the prosecution had not acted as an agent for Mr. Ahmed. The court also found that the prosecution could not have anticipated Mr. Ahmed's outburst and that his improper remarks cannot be imputed to the State. In making its findings, the trial court cited Mr. Ahmed's sworn statement in the trial transcript that he had made the improper remarks "spur of the moment, it had no reference or context."
The trial court also denied the State's request for sanctions. The court agreed that appellant had the right to appeal the denial of his habeas application. The court continued appellant's trial, pending resolution of this appeal.
In his opening brief, appellant identifies three issues in which he generally contends that the trial court erred in denying his habeas application and specifically contends that his retrial is barred by the double jeopardy clauses of the state and federal constitutions. Because they are interrelated, we, like the parties, jointly discuss and consider the three issues.

A. Legal Principles

1. Standard and Scope of Review
We review a trial court's ruling on a pretrial writ of habeas corpus for an abuse of discretion. Ex parte Wheeler, 203 S.W.3d 317, 323 (Tex.Crim.App.2006). In conducting this review, we view the facts in the light most favorable to the trial court's ruling and defer to the trial court's implied factual findings, which are supported by the record. Id. at 325-26.

2. Double Jeopardy Following Mistrial
The double jeopardy clauses of our federal and state constitutions protect a criminal defendant from repeated prosecutions for the same offense. See U.S. CONST. amend. V (providing "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb"); TEX. CONST. art. I, § 14 ("No person, for the same offense, shall be put twice in jeopardy of life or liberty."). In Oregon v. Kennedy, the United States Supreme Court held that the Fifth Amendment's Double Jeopardy Clause barred retrial after a defendant successfully moved for mistrial only when it was shown that the prosecutor engaged in conduct that was "intended to provoke the defendant into moving for a mistrial." 456 U.S. 667, 679, 102 S.Ct. 2083, 2091, 72 L.Ed.2d 416 (1982).
In contrast, the Texas Court of Criminal Appeals interpreted the Double Jeopardy provision of the Texas Constitution more expansively, to cover "reckless" conduct. Bauder v. State, 921 S.W.2d 696, 699 (Tex. Crim.App.1996). The Bauder court held that retrial would also be barred "when the prosecutor was aware but consciously disregarded the risk that an objectionable event for which he was responsible would require a mistrial at the defendant's request." Id. The Court of Criminal Appeals re-affirmed and clarified the standards enunciated in Bauder in Ex parte Peterson, 117 S.W.3d 804 (Tex.Crim.App. 2003).
Four years later, the Court of Criminal Appeals overruled Bauder and Peterson in Ex parte Lewis, 219 S.W.3d 335 (Tex. Crim.App.2007). The Lewis court held that "the proper rule under the Texas Constitution is the rule articulated by the United States Supreme Court in Oregon v. Kennedy," i.e., whether the prosecutor intended *705 to provoke the defendant into moving for a mistrial. Id. at 337.
Two months after deciding Lewis, the Court of Criminal Appeals decided Ex parte Masonheimer, 220 S.W.3d 494 (Tex. Crim.App.2007). The court held that the standard enunciated in Oregon v. Kennedy barred retrial "under the unique circumstances of that case" because the State had intentionally failed to disclose exculpatory evidence with the specific intent to avoid the possibility of an acquittal. Id. at 509. The Masonheimer court reasoned that "in a case like this, a defendant suffers the same harm as when the State intentionally `goads' or provokes the defendant into moving for a mistrial." Id. at 508-09.

B. Analysis
Citing Masonheimer, appellant contends, "In the instant case, circumstances existed which allow the actions of the complaining witness to be imputed to the prosecution, and to which Appellant suffered the same type of harm which would have resulted from the State `goading' Appellant into moving for a mistrial." In making this assertion, appellant does not recognize that in Masonheimer, as in Lewis, the Court of Criminal Appeals required intentional conduct by the State, which resulted in harm to the defendant. The Masonheimer court held that re-prosecution of the defendant was jeopardy barred because the State had failed to disclose exculpatory evidence with the specific intent to avoid the possibility of the defendant's acquittal. Id. at 509.
In this case, viewing the record in the light most favorable to the trial court's ruling, no action by the prosecution indicates that it had either the intent to goad appellant into a mistrial or the intent to avoid the possibility of appellant's acquittal. See Lewis, 219 S.W.3d at 336; Masonheimer, 220 S.W.3d at 507. Mr. Ahmed's sworn statements to the trial court following the mistrial indicate that he alone was accountable for his improper conduct and the resulting mistrial. Mr. Ahmed took responsibility for his conduct when he apologized to the trial court. As noted by the trial court, Mr. Ahmed stated that he had made the remarks "on the spur of the moment, without reference or context." Such comment indicates that he had not planned to make the remarks; rather, they were made out of anger and frustration.
In addition, the exchange between the prosecutor and the trial court before the recess indicates that the prosecution believed Mr. Ahmed to be physically ill with a stomach ailment. Nothing in the exchange indicates that the prosecution knew, or should have known, that Mr. Ahmed was also agitated or angry.
Appellant also asserts that, at the time of his outburst, a representative of the district attorney's office was seated with Mr. Ahmed outside the courtroom. Appellant contends that Mr. Ahmed was under "the supervision" of this representative. Appellant intimates that the representative was aware of Mr. Ahmed's agitated state and informed the prosecutor. Appellant also contends that a note passed by an intern to the prosecutor inside the courtroom indicated that Mr. Ahmed was ill and agitated. Relying on these factual allegations, and on a case from the Fourth Circuit Court of Appeals, United States v. Smith, appellant contends that the government's conduct can be "so reckless as to be `the functional equivalent' of intent to cause a mistrial." See 441 F.3d 254, 265 (4th Cir.2006). Given the Court of Criminal Appeals clear indication that the State's conduct must be intentional, not reckless, the merits of appellant's legal argument are doubtful. See Lewis, 219 S.W.3d at 336; Masonheimer, 220 S.W.3d *706 at 507. In any event, appellant's factual assertions underlying his argument are not supported by the record.
An applicant for a writ of habeas corpus bears the burden of proving his allegations by a preponderance of the evidence. Ex Parte Thomas, 906 S.W.2d 22, 24 (Tex.Crim.App.1995). The applicant also bears the burden of ensuring that a sufficient record is presented to show error requiring reversal on appeal. See Ex parte Chandler, 182 S.W.3d 350, 353 n. 2 (Tex.Crim.App.2005); Ex parte Kimes, 872 S.W.2d 700, 703 (Tex.Crim.App.1993). Here, appellant has failed to meet this burden.
The record does indicate that the State knew that Mr. Ahmed felt physically ill. Appellant, however, did not offer testimony or other evidence at the habeas hearing to support his factual allegations regarding the prosecution's knowledge of Mr. Ahmed's agitated state of mind. The allegations were contained in his verified application, but they were not supported by testimony or documentary evidence at the habeas hearing. See Ex parte Wells 169 Tex.Crim. 127, 332 S.W.2d 565, 565 (1960) ("The application for the writ, although sworn to, is but a pleading and does not prove itself."). Nor are they supported in the trial transcript. See State v. Ybarra, 942 S.W.2d 35, 36-37 (Tex.App.-Corpus Christi 1996, pet. dism'd) (explaining that review of habeas corpus proceeding is not limited to testimony and evidence adduced at the hearing, but includes the record as it existed before the trial court at the habeas hearing); see also Ex parte Turner, 612 S.W.2d 611, 612 (Tex.Crim.App. 1981) (holding that trial judge who presided over revocation of probation hearing and habeas corpus action could properly take judicial notice of evidence presented in revocation of probation hearing during habeas corpus action at which State offered no other evidence).
In Ex parte Washington, the Fort Worth Court of Appeals declined to hold that the state of mind of the prosecution's complaining witness could be imputed to the State to preclude further prosecution pursuant to the federal and state double jeopardy clauses.[1] 168 S.W.3d 227, 237-38 (Tex.App.-Fort Worth 2005, no pet.). Appellant argues that Washington is distinguishable from this case because, there, the State did not have advanced notice that its complaining witness would give inadmissible testimony. Appellant asserts that the State had notice of Mr. Ahmed's state of mind before his offensive conduct. We disagree.
Here, the evidence, when viewed in favor of the trial court's ruling, supports a finding that Mr. Ahmed's outburst in front of the jury is not attributable to the State's action or inaction. The record also supports a finding that the State could not *707 have anticipated the outburst. Most significantly, the record shows no intentional prosecutorial misconduct either to provoke appellant to move for a mistrial or to avoid appellant's acquittal. See Lewis, 219 S.W.3d at 336; Masonheimer, 220 S.W.3d at 507. In short, the record does not support appellant's claim that the State's re-prosecution of him is jeopardy barred under the federal and state constitutions.
We hold that the trial court properly exercised its discretion when it denied appellant's pre-conviction application for writ of habeas corpus.
We overrule appellant's three issues.

Conclusion
We affirm the judgment of the trial court denying appellant's request for habeas corpus relief.
NOTES
[1] The Washington court noted that every "federal or state court that has addressed the issue of whether a witness's state of mind should be attributed to the prosecution for the purposes of Fifth Amendment analysis has rejected such imputation." Ex parte Washington, 168 S.W.3d 227, 238 n. 3 (Tex.App.-Fort Worth 2005, no pet.). (citing, inter alia, United States v. Ford, 17 F.3d 1100, 1103 (8th Cir.1994); United States ex. rel. Clauser v. McCevers, 731 F.2d 423, 431 (7th Cir.1984); United States v. Green, 636 F.2d 925, 928-29 (4th Cir.1980); State v. Barnes, 222 Ga.App. 875, 476 S.E.2d 646, 647 (1996); People v. Walker, 308 Ill.App.3d 435, 241 Ill.Dec. 842, 720 N.E.2d 297, 299-301 (1999), appeal denied, 189 Ill.2d 678, 246 Ill.Dec. 921, 731 N.E.2d 770 (2000); State v. Wittsell, 275 Kan. 442, 66 P.3d 831, 837-39 (2003); Commonwealth v. Deloney, 20 S.W.3d 471, 474-75 (Ky.2000); Commonwealth v. Mitchell, 488 Pa. 75, 410 A.2d 1232, 1237 (1980); State v. Hopson, 113 Wash.2d 273, 778 P.2d 1014, 1018-19 (1989); State v. Clements, 175 W.Va. 463, 334 S.E.2d 600, 604-05 (1985)).