

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

EX PARTE:  VIKKI MACIAS

§

§

§

§

§

§

No. 08-12-00192-CR

Appeal from

210th District Court

of El Paso County, Texas

(TC # 20110D01993)

**O P I N I O N**

Vikki Macias appeals from an order denying her application for writ of habeas corpus. For the reasons that follow, we affirm.

**FACTUAL SUMMARY**

An El Paso County grand jury returned a two-count indictment against Macias alleging she committed capital murder of a person under six years of age (Count I) and injury to a child with intent or knowledge by omission causing serious bodily injury (Count II).  Detective Rosalynn Carrasco of the El Paso Police Department testified on the second day of trial.  When asked by the prosecutor to explain how she became involved in the case, Carrasco began crying and said, "I apologize, it's unprofessional."  She composed herself and answered the question and proceeded to give brief answers to two more questions.  When Carrasco testified that the child victim had died, she began sobbing loudly before the jury.  The prosecutor stated she had

no further questions. The trial court excused the jury and addressed what had just transpired. After a brief discussion, Macias moved for a mistrial. The trial judge, characterizing the witness's behavior before the jury as an "emotional breakdown," granted the motion for mistrial but he declined to find that the prosecutors had committed prosecutorial misconduct or had acted in bad faith.

Macias filed an application for writ of habeas corpus to prohibit further prosecution on double jeopardy grounds under the constitutions of both Texas and the United States. The trial court, apparently utilizing the court reporter's transcription of Carrasco's testimony, described in detail what had happened before, during, and after Carrasco's emotional outburst. Assistant District Attorney Jennifer VandenBosch testified that she had spoken with Detective Carrasco in preparation for the case, during pretrials, and after trial began, and Carrasco had not indicated to her that she had any emotional problems regarding the case. VandenBosch had no idea that Carrasco would lose her composure on the witness stand, and if she had known this to be the case, she would not have called Carrasco as a witness. VandenBosch expressly denied that either she or Assistant District Attorney Penny Hamilton asked the witness to make an emotional outburst to taint the jury or goad the defense into requesting a mistrial. On cross-examination, VandenBosch admitted that she knew Detective Carrasco had cried while talking to Hamilton on the telephone shortly after the victim died and more than a year before trial, but she reiterated that the witness had not given her any indication that she would lose her composure on the stand.

Detective Carrasco testified at the writ hearing that she cried while talking on the telephone with Hamilton about the case over a year before trial. The case continued to trouble

her emotionally, but she did not reveal that to anyone including the two prosecutors. She spoke with VandenBosch about a week and a half before trial and she did not tell either of the prosecutors that she had any concern about being able to control her emotions.

Richard Huffman, an attorney, was present prior to Detective Carrasco's testimony and saw her seated in the courtroom while the attorneys were discussing an issue with extraneous offenses. He noticed that she sat with her hands by her face and over her eyes. He did not observe her crying but she appeared to be "emotional." At the conclusion of the hearing, the trial court denied the writ application because it found that a retrial was not barred by the double jeopardy clause because the mistrial was with the defendant's consent and due to manifest necessity. The trial court specifically found that the State did not act with bad faith and did not have a specific intent to provoke or goad defense counsel into seeking a mistrial.

## DOUBLE JEOPARDY

In her sole issue, Macias contends that the double jeopardy provisions of the United States and Texas constitutions prohibits a retrial in this case because a mistrial was declared at her request due to the intentional misconduct of the State and its witness. *See* U.S. CONSTITUTION amend. V; TEXAS CONSTITUTION art. 1, § 14. The State responds that Macias failed to establish that the prosecutors engaged in conduct that was intended to provoke her into moving for a mistrial.

### *Review Restricted to Fifth Amendment*

Macias's brief does not contain any argument or authority explaining how the protection provided by Article I, Section 14 of the Texas Constitution differs from the protection provided

by the Fifth Amendment. An appellant is required to raise state and federal constitutional claims as separate grounds with separate substantive analysis or argument provided for each ground. *See Berry v. State*, 233 S.W.3d 847, 855 n.3 (Tex.Crim.App. 2007); *Muniz v. State*, 851 S.W.2d 238, 251-52 (Tex.Crim.App. 1993); *Heitman v. State*, 815 S.W.2d 681, 690-91 n.23 (Tex.Crim.App. 1991). Because Macias does not argue that the Texas Constitution provides more protection than the United States Constitution, we will restrict our analysis of the double jeopardy claim to the Fifth Amendment. *See Flores v. State*, 319 S.W.3d 697, 702 n.8 (Tex.Crim.App. 2010); *Muniz*, 851 S.W.2d at 251-52.

*Relevant Law and Standard of Review*

The Fifth Amendment provides that a person shall not be twice put in jeopardy for the same offense. TEX.CONST. Amend. V. Thus, it protects a criminal defendant from repeated prosecutions for the same offense. *Oregon v. Kennedy*, 456 U.S. 667, 671, 102 S.Ct. 2083, 2087, 72 L.Ed.2d 416 (1982). The Double Jeopardy Clause affords a criminal defendant a "valued right to have his trial completed by a particular tribunal." *Oregon v. Kennedy*, 456 U.S. at 671-72, 102 S.Ct. at 2087; *see Ex parte Lewis*, 219 S.W.3d 335, 371 (Tex.Crim.App. 2007)(adopting *Oregon v. Kennedy* standard as the correct standard when addressing a double jeopardy claim under the Texas Constitution and overruling *Bauder v. State*, 921 S.W.2d 696 (Tex.Crim.App. 1996), which had established a rule that retrial would be barred when it was shown that the prosecutor was aware of but consciously disregarded the risk that his conduct would require a mistrial at the defendant's request).

As a general rule, when a mistrial is granted at the defendant's request, double jeopardy

principles do not bar a retrial. *Oregon v. Kennedy*, 456 U.S. at 673, 102 S.Ct. at 2088. An exception occurs and the Double Jeopardy Clause will bar retrial when the defendant is able to show that the prosecution engaged in conduct that was intended to provoke the defendant into moving for a mistrial. *Oregon v. Kennedy*, 456 U.S. at 679, 102 S.Ct. at 2091; *Ex parte Lewis*, 219 S.W.3d 335, 371 (Tex.Crim.App. 2007). This exception has been described by both the United States Supreme Court and the Court of Criminal Appeals as a narrow one. *See Oregon v. Kennedy*, 456 U.S. at 673, 102 S.Ct. at 2088; *Ex parte Masonheimer*, 220 S.W.3d 494, 506 (Tex.Crim.App. 2007).

A habeas corpus applicant must prove her double jeopardy claim by a preponderance of the evidence. *State v. Guerrero*, 400 S.W.3d 576, 583 (Tex.Crim.App. 2013). Consequently, to be entitled to habeas corpus relief on double jeopardy grounds, Macias was required to establish by a preponderance of the evidence that the prosecutor engaged in conduct that was intended to provoke her into moving for a mistrial. *See Kennedy*, 456 U.S. at 679; *Ex parte Peterson*, 117 S.W.3d 804, 818 (Tex.Crim.App. 2003). In reviewing the trial court's decision to deny habeas relief, we review the evidence in the light most favorable to the trial court's ruling. *Ex Parte Masonheimer*, 220 S.W.3d at 507. Generally, a trial court's decision denying habeas relief will be upheld absent an abuse of discretion. *Ex parte Wheeler*, 203 S.W.3d 317, 324 (Tex.Crim.App. 2006).

*Analysis*

Macias argues that the prosecutors were aware Carrasco had cried while speaking to Hamilton at the inception of the case and she appeared to be having emotional difficulties in the

minutes prior to her testimony, and therefore, the prosecutors should have anticipated the witness would have a "meltdown" when she testified. This is similar to the argument raised by the appellant in *Washington v. State*, 326 S.W.3d 701 (Tex.App.--Houston [1st Dist.] 2010, no pet.), a case which involved an emotional outburst by the complainant just before he testified.

In *Washington*, the defendant was charged with burglarizing a jewelry store owned by Sohail Ahmed. *Washington*, 326 S.W.3d at 701. After trial began and shortly before Mr. Ahmed's testimony, the prosecutor informed the trial court and the defense that the complainant was ill so the court took a brief recess. *Id.* at 702. During the recess, the complainant had a loud confrontation with the court's bailiff in the hallway and made disparaging remarks about "the bailiff, the prosecution, the defense attorneys, the defendant, and the judicial process generally." *Id.* Several of the jurors were present in the hallway and heard the outburst. *Id.* The trial court granted Washington's motion for a mistrial. *Id.* The trial court called the complainant into the courtroom and placed him under oath. *Id.* Mr. Ahmed explained that he was ill from food poisoning, the burglary had created a financial hardship, and he was frustrated that it had taken three years for the case to go to trial. *Id.* He apologized and explained that his outburst had occurred "spur of the moment." *Id.* Washington subsequently filed a habeas application asserting that further prosecution was barred by double jeopardy principles. *Id.* At the hearing, Washington argued that the prosecutors were aware that Mr. Ahmed was ill and agitated because an intern had given the prosecutor a note stating that Mr. Ahmed was ill and "having problems." *Id.* at 703. The trial court denied habeas relief. *Id.* at 704.

On appeal, Washington argued that the actions of the complaining witness were imputed

to the prosecution and he suffered the same type of harm which would have resulted from the State goading him into moving for a mistrial. *Washington*, 326 S.W.3d at 705. The First Court of Appeals rejected Washington's assertion that double jeopardy would apply to anything other than intentional conduct by the prosecution. *Id.* It found that the record did not support Washington's assertion that the prosecution knew, or should have known, that Mr. Ahmed was angry or agitated. *Id.* It further held that the record did not support a finding that the prosecution had the intent to goad Washington into a mistrial or the intent to avoid the possibility of an acquittal. *Id.*, 326 S.W.3d at 705-06, *citing Lewis*, 219 S.W.3d at 336 and *Masonheimer*, 220 S.W.3d at 507.

The case before us is similar to *Washington* because it also involves an emotional outburst by a witness. Carrasco testified at the writ hearing that she did not expect to have any difficulties when testifying. She denied crying prior to her testimony while seated in the courtroom. She explained that she had lowered her face and looked down in an effort to concentrate and prepare for her testimony. There is no evidence that anyone, other than Huffman, saw Carrasco seated with her head down immediately prior to her testimony. Both prosecutors knew that Carrasco had cried while talking on the phone with Hamilton shortly after the victim died, but that occurred more than a year before trial and Carrasco gave no indication to either prosecutor that she was having trouble controlling her emotions at the time of trial. VandenBosch believed the detective had gotten emotional during the telephone conversation with Hamilton because it was the first case Carrasco had worked on where the child victim had died. VandenBosch worked with Carrasco while "pre-trialing" the case approximately a week

and a half before trial and Carrasco did not give her any indication that she was having any emotional difficulties or could not testify without breaking down emotionally. VandenBosch also testified that she and Hamilton believed they would obtain convictions on both counts and they had no idea Carrasco would lose her composure on the witness stand.

Macias candidly admits she cannot argue that the State called Carrasco to the stand to intentionally sabotage the case, but she asserts it is possible that the prosecutors were aware of Carrasco's fragile state of mind and they intentionally elected to have her testify anyway. Thus, Macias asks us to find a double jeopardy bar where the State engaged in some kind of intentional conduct even where there is no evidence that the prosecutors acted with the requisite intent to provoke or goad the defendant into seeking a mistrial. Such a holding would be contrary to the *Oregon v. Kennedy* standard which we are obligated to apply. Macias was required to prove by a preponderance of the evidence that the State acted with the intent to provoke or goad Macias into seeking a mistrial. *See Washington*, 326 S.W.3d at 705-07.

The trial court affirmatively found that the State did not have any intent to provoke or goad Macias into seeking a mistrial. When reviewing this finding we keep in mind that the trial court is in the best position to determine whether a prosecutor's conduct evinces intent to cause a mistrial. *See Lewis*, 219 S.W.3d at 362. The evidence, when viewed in the light most favorable to the trial court's findings and ruling, does not show that the prosecutors were aware of Carrasco's emotional condition at the time of trial or that they suspected she would lose her composure on the witness stand. More importantly, the record does not show that the prosecutors had any intent to provoke or goad Macias into seeking a mistrial. *See Washington*,

326 S.W.3d at 705-07.  Accordingly, we overrule the sole issue presented and affirm the order of

the trial court denying Macias's writ application.


October 22, 2014

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.
(Rivera, J., not participating)

(Do Not Publish)