**Opinion issued February 5, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-14-01008-CR

————————————

## EX PARTE IBRAHAM MUSTAFA ALTOBJI, Appellant

---

**On Appeal from the 182nd District Court**
**Harris County, Texas**
**Trial Court Case No. 1188377B**

---

## MEMORANDUM OPINION

Appellant, Ibraham Mustafa Altobji, appeals from the trial court's denial of

his application for the writ of habeas corpus.  We affirm.

### Background

Altobji pleaded guilty on June 10, 2009, to the state jail felony of theft.  *See*

TEX. PENAL CODE ANN. § 31.03(a), (e)(4)(A) (West Supp. 2014).  Pursuant to

Altobji's plea bargain agreement with the State, the trial court deferred making any finding on Altobji's guilt, placed him on community supervision for two years, and assessed a $750 fine. Altobji's sworn plea paperwork states: "If you are not a United States citizen, pleading guilty or no contest to a criminal charge may result in removal, denial of naturalization or exclusion from admission into the United States." The paperwork further states that Altobji "freely and voluntarily plead[ed] guilty or no contest," that he read and understood the court's admonishments and understood the "plea's consequences," and that he was "satisfied that the attorney representing [him] . . . properly represented [him] and [he] . . . fully discussed this case with [his attorney]." Altobji did not appeal from the trial court's June 10, 2009 judgment.

At some point after June 10, 2009, Altobji, who is a lawful permanent resident of the United States and is originally from Jordan, left the United States. After his return, Immigration and Customs Enforcement (ICE) initiated deportation proceedings against him. Altobji is subject to deportation as a result of having committed a crime of moral turpitude within five years of entry to the United States. *See* 8 U.S.C.S. § 1227(a)(1)(A), (a)(2)(A) (LexisNexis 2007); *see also* 8 U.S.C.S. § 1182(a)(2)(A)(i)(I) (LexisNexis 2008).

Altobji filed an application for writ of habeas corpus on August 20, 2014, challenging the voluntariness of his guilty plea based on allegedly ineffective

assistance of counsel and requesting that the trial court vacate its judgment placing him on community supervision. The State responded on September 16, 2014, and Altobji filed an addendum to his application on November 17, 2014. The trial court denied his application on November 25, 2014. Altobji timely filed a notice of appeal on December 4, 2014.

## Standard of Review

We review a trial court's ruling on an application for writ of habeas corpus for an abuse of discretion. *See Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006); *Washington v. State*, 326 S.W.3d 701, 704 (Tex. App.—Houston [1st Dist.] 2010, no pet.). In conducting this review, we view the facts in the light most favorable to the trial court's ruling. *See Kniatt*, 206 S.W.3d at 664; *Washington*, 326 S.W.3d at 704.

A habeas applicant bears the burden of establishing that the facts entitle the applicant to relief. *See Ex parte Morrow*, 952 S.W.2d 530, 534 (Tex. Crim. App. 1997); *Ex parte Murillo*, 389 S.W.3d 922, 926 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

## Applicable Law

For a guilty plea to be consistent with due process, it must be entered knowingly, intelligently, and voluntarily. *See Kniatt*, 206 S.W.3d at 664; *Ex parte Olvera*, No. 05-11-01349-CR, 2013 WL 4052467, at *2 (Tex. App.—Dallas Aug.

12, 2013, pet. ref'd) (mem. op., not designated for publication). A guilty plea may not be induced by threats, misrepresentations, or improper promises. *See Kniatt*, 206 S.W.3d at 664; *Morrow*, 952 S.W.2d at 534. "Generally, a guilty plea is considered voluntary if the defendant was made fully aware of the direct consequences [of the plea]." *State v. Jimenez*, 987 S.W.2d 886, 888 (Tex. Crim. App. 1999); *Olvera*, 2013 WL 4052467, at *2; *see also Ex parte Moussazadeh*, 361 S.W.3d 684, 691 (Tex. Crim. App. 2012) ("[W]e continue to recognize the distinction between direct and collateral consequences . . . ."). "A defendant's sworn representation that his guilty plea is voluntary 'constitutes a formidable barrier in any subsequent collateral proceedings.'" *Kniatt*, 206 S.W.3d at 664 (quoting *Blackledge v. Allison*, 431 U.S. 63, 73–74, 97 S. Ct. 1621, 1629 (1977)).

"A guilty plea is not knowing or voluntary if made as a result of ineffective assistance of counsel." *Moussazadeh*, 361 S.W.3d at 689 (citing *Ex parte Burns*, 601 S.W.2d 370, 372 (Tex. Crim. App. 1980)). When a habeas applicant challenges a guilty plea based on ineffective assistance of counsel, we apply the two-pronged *Strickland* test. *See Murillo*, 389 S.W.3d at 926 (citing *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S. Ct. 366, 370 (1985)); *see also Strickland v. Washington*, 466 U.S. 668, 687–88, 694, 104 S.Ct. 2052, 2064–65, 2068 (1984). To be entitled to relief, an applicant challenging his guilty plea based on ineffective assistance must establish that: (1) trial counsel's performance fell below

4

an objective standard of reasonableness, and (2) a reasonable probability exists that, but for counsel's ineffectiveness, the result of the proceeding would have been different. *See Moussazadeh*, 361 S.W.3d at 691 (quoting *Ex parte White*, 160 S.W.3d 46, 49 (Tex. Crim. App. 2004)); *Ex parte Carpio-Cruz*, No. 08-10-00240-CR, 2014 WL 5316988, at *2 (Tex. App.—El Paso Oct. 17, 2014, no pet.) (not designated for publication) (citing *Strickland*, 466 U.S. at 687–88, 694, 104 S.Ct. at 2064; *Moussazadeh*, 361 S.W.3d at 691); *Ex parte Roldan*, 418 S.W.3d 143, 145 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (citations omitted).

## Analysis

In his application for writ of habeas corpus, Altobji argues that his guilty plea was involuntary because his trial counsel rendered ineffective assistance of counsel by (1) failing to advise him that he was pleading guilty to a crime involving moral turpitude and therefore failing to inform him of the immigration consequences and other consequences of pleading guilty to a crime involving moral turpitude and (2) failing to advise him that he would face immigration consequences as a result of his plea. In an addendum to his application, Altobji further argues that counsel rendered ineffective assistance by providing him with misadvice that caused him to be arrested and spend the night prior to entering his guilty plea in jail, which caused him to be "under duress when he accepted the plea bargain," thereby "call[ing] into question" the voluntariness of his plea. Altobji

5

contends that he would not have pleaded guilty if counsel had fully informed him of the consequences of the plea.

Under *Padilla v. Kentucky*, trial counsel representing a criminal defendant "must inform her client whether his plea carries a risk of deportation." 559 U.S. 356, 374, 130 S. Ct. 1473, 1486 (2010). Counsel's performance is deficient if counsel fails to advise a noncitizen client about deportation consequences that are "truly clear." *Id.* at 369, 130 S. Ct. at 1483. *Padilla*, however, does not apply retroactively, and therefore "defendants whose convictions became final prior to *Padilla* . . . cannot benefit from its holding." *Chaidez v. United States*, 133 S. Ct. 1103, 1113 (2013); *see Ex parte De Los Reyes*, 392 S.W.3d 675, 679 (Tex. Crim. App. 2013).

Here, Altobji pleaded guilty on June 10, 2009, before *Padilla* was decided on March 31, 2010, and he did not take any further action regarding the trial court's order of deferred adjudication. His conviction therefore became final for purposes of *Padilla* and federal immigration law on June 10, 2009, and he may not benefit from *Padilla's* holding. *See State v. Guerrero*, 400 S.W.3d 576, 588 (Tex. Crim. App. 2013); *Carpio-Cruz*, 2014 WL 5316988, at *3.

Under pre-*Padilla* law, immigration consequences were collateral consequences of a guilty plea, and "the constitutional guarantee to effective assistance of counsel does not extend to 'collateral' aspects of the prosecution;

thus, a pre-*Padilla* plea is not involuntary even if counsel [was] deficient in advising his client regarding the immigration consequences." *Roldan*, 418 S.W.3d at 147; *see Jimenez*, 987 S.W.2d at 888–89; *Morrow*, 952 S.W.2d at 536; *Carpio-Cruz*, 2014 WL 5316988, at *2, 3; *Olvera*, 2013 WL 4052467, at *7. Accordingly, Altobji's trial counsel did not have an obligation to advise him on the possible immigration consequences of his plea, and Altobji cannot satisfy the first prong of the *Strickland* test and cannot show that his plea was involuntary based on any alleged failure of counsel to fully advise him regarding the immigration consequences of his plea. *See Morrow*, 952 S.W.2d at 536–37; *Carpio-Cruz*, 2014 WL 5316988, at *3; *Roldan*, 418 S.W.3d at 147; *Olvera*, 2013 WL 4052467, at *7.

Similarly, the other, non-immigration consequences of pleading guilty to a crime of moral turpitude discussed by Altobji—that pleading guilty to a crime involving moral turpitude "can lead to Applicant's refusal for licensing," such as licensing to become a nurse or an electrician[1]—are collateral consequences, of

---

[1] Altobji also argues that trial counsel failed to inform him "of the consequences of a crime involving moral turpitude in relation to travel" and of the "negative consequences that could result from Petitioner travelling outside of the United States with this criminal conviction on his record." Altobji argues that the issue is not whether trial counsel "informed [him] regarding immigration consequences but rather if [trial counsel] . . . informed [him] regarding the issues of a crime involving moral turpitude" and that it "was the failure to advise [him] of the consequences of the crime involving moral turpitude which led" to his placement in removal proceedings. Contrary to Altobji's arguments, however, although the consequences of pleading guilty which led to his placement in removal proceedings and of which he contends trial counsel failed to inform him— including any restrictions on his travel—may result from the classification of the

7

which Altobji did "not have to be knowledgeable [for] his plea [to be] considered knowing and voluntary." *Morrow*, 952 S.W.2d at 536; *see also Ex parte Drinkard*, No. 02-11-00369-CR, 2012 WL 3207428, at \*2 (Tex. App.—Fort Worth Aug. 9, 2012, no pet.) (mem. op., not designated for publication).

Finally, Altobji argues that trial counsel misadvised him on his need to appear in court,[2] that this misadvice caused him to be detained overnight, and that, as a result, "the voluntariness of the plea . . . is called into question." Altobji fails to actually assert that his plea was involuntary based on this alleged misadvice. Nevertheless, Altobji contends that counsel's alleged misadvice caused him to be detained overnight and that the detention placed him "under duress when he accepted the plea bargain," because he "was in distress after having been in jail all night with no sleep and only able to speak with his attorneys through a glass partition," which, "combined with his vision issues, created a high-stress situation

---

crime to which he pleaded guilty as a crime of moral turpitude, these consequences are based on immigration law and are therefore immigration consequences.

[2] According to Altobji, he was required to appear in court on June 8, 2009, because his previous counsel, Neal Davis, was withdrawing from representation and new counsel, Nate Tarlow, and a second counsel who would assist Tarlow, Mohamad Ghuneim, were taking over his representation. In court, Altobji was informed that he must appear again in court on June 9, 2009, but Ghuneim called him on the evening of June 8, 2009, and told him he did not need to appear in court on June 9, 2009. Altobji's bonding company contacted him on June 9, 2009, when he failed to appear, at which time he went to court, where the trial court revoked his bond. Altobji then spent the night in jail, where he was unable to remove his contact lenses, causing his vision to become blurry, and where he was "terrified" and "confused, scared and surrounded by other individuals who were making noise."

8

for him." It therefore appears that Altobji is arguing that his plea was involuntary because he was required to spend one night in custody. Regardless of the reason why Altobji spent the night in jail, however, a mere showing that Altobji pleaded guilty after spending one night in jail is not sufficient to overcome his sworn representation that his guilty plea was voluntarily made nor does it satisfy his burden of establishing that he is entitled to relief. *Cf. Morrow*, 952 S.W.2d at 535 ("Therefore, a showing of an inducement beyond that implicit in the plea bargaining process must be made to prevail on a claim that the pleas were 'involuntary' because they were improperly induced."); *Deckard v. State*, No. 04-03-00852-CR, 2004 WL 1195829, at *2 (Tex. App.—San Antonio June 2, 2004, no pet.) (mem. op., not designated for publication) ("Although Deckard's desire to get out of jail may have induced him to plead no contest, this factor is implicit in the plea bargaining process.").

Accordingly, we conclude that the trial court did not abuse its discretion when it found that Altobji "fails to show that counsel's conduct fell below an objective standard of reasonableness . . .," that the "totality of the representation afforded [Altobji] was sufficient to protect his right to reasonably effective assistance of counsel in the primary case," that Altobji "fails to show that his guilty plea was . . . made involuntarily," and that Altobji "fails to overcome the presumption that his guilty plea was knowingly and voluntarily made." *See, e.g.*,

9

*Roldan*, 418 S.W.3d at 145 ("We apply the same deference to review the habeas court's application of law to fact questions if the resolution of those determinations rests on an evaluation of credibility and demeanor.").

Alternatively, we may uphold the trial court's ruling because it found that counsel "admonished [Altobji] that a plea to the offense of theft would trigger immigration problems for the applicant due to theft being a crime of moral turpitude" and that Altobji's "assertion that he was never informed by counsel that theft was a Crime of Moral Turpitude is not credible," and those findings are supported by the evidence, namely, trial counsel's affidavit stating that he explained to Altobji "that certain crimes, such as theft, are characterized by immigration authorities as crimes of moral turpitude," that "a misdemeanor conviction of theft would still constitute a crime of moral turpitude," "that acceptance of [the plea] offer would involve a plea of guilty to a crime of moral turpitude," and "that this offense would trigger such immigration problems for Mr. Altobji due to theft being a crime of moral turpitude."[3] Because the trial court's findings turn on an evaluation of credibility and are supported by counsel's affidavit, we defer to those findings. *See Ex parte Harrington*, 310 S.W.3d 452,

---

[3] Further, in an affidavit signed on November 17, 2014, Altobji stated only that he did "not recall [trial counsel] ever making any comments stating that this crime was a crime of moral turpitude," without stating that trial counsel did not so inform him.

10

457 (Tex. Crim. App. 2010); *Manzi v. State*, 88 S.W.3d 240, 242–44 (Tex. Crim. App. 2002); *Roldan*, 418 S.W.3d at 147–48.

## Conclusion

The trial court did not abuse its discretion by denying Altobji's application for the writ of habeas corpus, because Altobji failed to carry his burden of proving his entitlement to relief.

Accordingly, we affirm the trial court's judgment. We dismiss any pending motions as moot.

## PER CURIAM

Panel consists of Chief Justice Radack and Justices Bland and Huddle.

Do not publish. TEX. R. APP. P. 47.2(b).