**Opinion issued August 27, 2019**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-19-00100-CR

————————————

## EX PARTE MAURICE EDWARDS, Appellant

---

**On Appeal from the 209th District Court**
**Harris County, Texas**
**Trial Court Case No. 1620108**

---

## O P I N I O N

Appellant, Maurice Edwards, challenges the trial court's order denying his pretrial application for a writ of habeas corpus. In his sole issue, appellant contends that the trial court erred in denying his requested relief, which he sought on the

ground that the ten-year statute of limitations barred prosecution of the alleged felony offense of aggravated sexual assault.[1]

We reverse the trial court's order.

## Background

On November 16, 2017, a Harris County Grand Jury issued a true bill of indictment, accusing appellant of committing the felony offense of aggravated sexual assault on or about May 2, 2003. Appellant filed a verified application for a writ of habeas corpus asserting that his confinement and restraint were illegal because the statute of limitations barred prosecution for the alleged offense in violation of the Sixth Amendment to the United States Constitution, Article I section 10 of the Texas Constitution, and Article 12.01 of the Texas Code of Criminal Procedure.[2] Relator sought "dismissal of the charge as being outside the statute of limitations."

The trial court held a hearing on appellant's application. Appellant offered, and the trial court admitted into evidence without objection, a copy of the complaint, the indictment, article 12.01 of the Texas Code of Criminal Procedure, and a

---

[1] *See* TEX. PENAL CODE ANN. § 22.021(a); *see also* TEX. CODE CRIM. PROC. ANN. arts. 12.01(2)(E), 12.03(d).

[2] *See* U.S. CONST. amend VI; TEX. CONST. art. I, § 10; TEX. CODE CRIM. PROC. ANN. arts. 12.01(2)(E), 12.03(d).

Houston Police Department ("HPD") offense report.  The parties "stipulat[ed] to the facts that [were] in the offense report" for the purposes of the hearing.

In the report, HPD Officer B.K. Foley states that, on May 2, 2003, he "was dispatched to a sexual assault [that had] just occurred," and upon his arrival, "the complainant was at the scene" and the perpetrator was not present.  He spoke with the complainant, who said that the alleged perpetrator's name was "Maurice" and she "[did] not know his last name or phone number off hand," had met him when she worked at "Moments Cabaret," and had "gone out with [him] a few times."  On the day of the sexual assault, she "called [Maurice] to come and pick her up from a friend[']s house" and he "was going to eventually give her a ride to [a convenience store] where her boyfriend was supposed to be waiting."  However, Maurice drove past the store and "into an apartment complex," where the complainant "tried to get out of the vehicle" as Maurice began "grabbing her and hitting her."  When the complainant tried to get away, Maurice started to choke her.  Maurice then "took her clothes [off] and had sex with her."

Emergency personnel transported the complainant to a hospital "to have a rape kit done."  Officer Foley "ran the license plate [number] of [Maurice's] vehicle," which two witnesses at the scene had given to him.  The information he received from "r[unning] the license plate [number]" indicated that "there was a city warrant on the vehicle for a Maurice Edwards[, date of birth] 11-13-77," along

3

with a Texas driver's license number. Foley then "ran the criminal history on [Maurice Edwards] and the [information] matched" the information that the complainant had given. In his report, Foley identified "one possible suspect" as "Edwards, Maurice Ellis." Foley also noted that the complainant "was very hysterical and hard to interview," "often did not answer questions and appeared to not be telling the whole truth about her relationship with [Maurice] and how they met both originally and [the day of the sexual assault]," and "often tried to change the subject and appeared to be withholding information."

On May 6, 2003, HPD Officer L.D. Garretson, who had been assigned to the investigation, supplemented the offense report to state that there had not been a supplement made "regarding the recovery/tagging of the complainant's sexual assault kit into the HPD property room." On May 15, 2003, HPD Officer M. Walding supplemented the offense report to state that he had stopped a car that matched the description of Maurice's car, the driver "was identified as Tommie C. Lewis," and "[t]he passenger claimed he was Jason Lewis." When Walding asked Tommie "when he last saw Maurice," Tommie answered "about a year ago." Walding called the complainant, who stated that "this was obvious[ly] a lie," and she advised Walding that neither of the men "fit the description" of Maurice.

On May 16, 2003, Officer Garretson reviewed "[the] complainant's sexual assault examination forensic report forms for [submission] to the HPD crime lab for

4

DNA analysis and comparison purposes." In his supplement to the offense report, he noted that the complainant had not attempted to contact him and had not responded to the "Sex Crimes Unit Contact Letter" that he had sent to her. According to Garretson, "[u]ntil this contact" from the complainant was received, the status of the investigation was "case cleared due to lack of prosecution by [the] complainant."

A November 7, 2013 supplement to the offense report reflects that laboratory testing "in association with a request for outsourced – DNA analysis" was completed. And a February 5, 2014 supplement to the offense report shows that a laboratory analysis "in association with a request for CODIS analysis" was completed.[3]

On April 13, 2014, HPD Officer J. Lewis supplemented the offense report to state that, on March 13, 2014, he had received the case "for further investigation regarding a CODIS match confirmation." HPD Officer N. Vo updated the offense report on August 22, 2017. He stated that he had interviewed the complainant, who "positively identified [Maurice] through [a] photo[graphic] array even though the

---

[3]     "CODIS" stands for "Combined DNA Index System." *Segundo v. State*, 270 S.W.3d 79, 83 n.3 (Tex. Crim. App. 2008); *see also* TEX. CODE CRIM. PROC. ANN. art. 411.141 ("'CODIS' means the FBI's Combined DNA Index System" and "includes the national DNA index system sponsored by the FBI"). *Williams v. State*, No. 09-14-00463-CR, 2017 WL 1455962, at *1 n.1 (Tex. App.—Beaumont Apr. 19, 2017, no pet.) (mem. op., not designated for publication) (describing CODIS as "the combined DNA electronic database system that houses DNA profiles from different sources").

5

[sexual assault] happened 13 years ago." He further stated that the Harris County District Attorney's Office had "advised that charges for aggravated sexual assault were accepted" and a search warrant for buccal swabs from Maurice, who "[was] currently in jail for another charge," would be obtained.

On September 20, 2017, Officer Vo obtained two buccal swabs from appellant and submitted them for DNA analysis and comparison "to the male DNA that was found in the complainant's sexual assault kit." In a November 1, 2017 supplement to the offense report, Vo noted that the laboratory results from the buccal swabs were still pending. "However, the case [had] been thoroughly investigated" and charges had been filed. On November 16, 2017, the grand jury issued a true bill of indictment, accusing appellant of committing the felony offense of aggravated sexual assault on or about May 2, 2003.

No other evidence was offered or admitted at the hearing, and no witnesses testified. In response to appellant's habeas application, the State argued that, under Texas Code of Criminal Procedure article 12.01(1)(C)(i), no statute of limitations applied to the instant case because biological matter was collected during the investigation and subjected to forensic DNA testing, and the testing results "[did] not match [the complainant] or any other person whose identity [was] readily ascertained." According to the State, the crux of the issue "boil[ed] down to the proper definition of 'readily ascertained'" and appellant "was absolutely

6

ascertainable" but was not "readily ascertained," as the statute required for no statute of limitations to apply.[4] The State asserted that it "did not have the link to [appellant] based on his DNA until 2014," and "[w]ithout a DNA profile being obtained from the testing of the [sexual assault] kit, a suspect, under the law, has not been readily ascertained." In other words, appellant was not "readily ascertained to a point where the State believed that it had gathered enough evidence sufficient to prove [its] case beyond a reasonable doubt until the CODIS hit and the subsequent identification of [appellant] out of [the photographic array] by the complainant, which did not occur until 2017."

In contrast, appellant argued that the prosecution was time barred because the ten-year statute of limitations[5] applied to the instant case and he was not "indicted until 2017," which was "beyond" the ten-year statute of limitations period. As to Texas Code of Criminal Procedure article 12.01(1)(C)(i), appellant argued that "[t]he question [was] whether or not he [could have] been ascertained on the date that the DNA [results] came back," he could have been ascertained by looking at the offense report, and his "identity [was] actually ascertained on the date that the DNA [testing] was done."

---

4       *See* TEX. CODE CRIM. PROC. ANN. art. 12.01(1)(C)(i).

5       *See id.* arts. 12.01(2)(E), 12.03(d).

At the end of the hearing, the trial court stated that appellant "was known at the time." But also that "'ascertainable' . . . means a little bit more than reasonable suspicion"; and "without [the complainant's] cooperation" and "putting [appellant] in a photo spread," the HPD officers were not "able to ascertain [appellant] at the time" and he was not "readily ascertainable at the time." The trial court denied appellant's application for a writ of habeas corpus.

**Standard of Review**

A pretrial writ of habeas corpus is an extraordinary remedy. *Ex parte Ingram*, 533 S.W.3d 887, 891 (Tex. Crim. App. 2017); *see Ex parte Arango*, 518 S.W.3d 916, 924 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) (explaining proper use of pretrial habeas relief is where "conservation of judicial resources would be better served by interlocutory review" (internal quotations and citation omitted)). A defendant may use a pretrial writ in very limited circumstances, including to challenge a court's jurisdiction if the face of the indictment shows that the statute of limitations bars a prosecution. *Ex parte Smith*, 178 S.W.3d 797, 802 (Tex. Crim. App. 2005); *Ex parte Tamez*, 38 S.W.3d 159, 160 (Tex. Crim. App. 2001). Limitations is an absolute bar to prosecution. *See Ex parte Smith*, 178 S.W.3d at 802.

The applicant for a writ of habeas corpus has the burden to establish his entitlement to relief by preponderance of the evidence. *Kniatt v. State*, 206 S.W.3d

657, 664 (Tex. Crim. App. 2006). We review the trial court's ruling on a pretrial application for a writ of habeas corpus for an abuse of discretion. *See id.*; *Ex parte Arango*, 518 S.W.3d at 923–24; *Washington v. State*, 326 S.W.3d 701, 704 (Tex. App.—Houston [1st Dist.] 2010, no pet.). In conducting this review, we view the facts in the light most favorable to the trial court's ruling and defer to the trial court's implied factual findings that are supported by the record. *See Kniatt*, 206 S.W.3d at 664; *Washington*, 326 S.W.3d at 704. When the resolution of the ultimate issue turns on an application of purely legal standards, our review is de novo. *See Ex parte Martin*, 6 S.W.3d 524, 526 (Tex. Crim. App. 1999); *Ex parte Leachman*, 554 S.W.3d 730, 737 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd).

### Limitations

In his sole issue, appellant argues that the trial court erred in denying his requested relief because the State did not provide the "statutorily required evidence, such as forensic DNA testing results, that [were] necessary to trigger the article 12.01(1)(C) exception to the ten-year . . . statute of limitations" for the offense of aggravated sexual assault and appellant's identity was "readily ascertained" in 2003.

Generally, the statute of limitations for the offense of aggravated sexual assault of an adult is ten years from the date of the commission of the offense. *See* TEX. CODE CRIM. PROC. ANN. arts. 12.01(2)(E), 12.03(d); *see also Ex parte*

9

*Goodbread*, 967 S.W.2d 859, 865 (Tex. Crim. App. 1998). But there is no statute of limitations if "during the investigation of the offense biological matter is collected and subjected to forensic DNA testing and the testing results show that the matter does not match the victim or any other person whose identity is readily ascertained." TEX. CODE CRIM. PROC. ANN. art. 12.01(1)(C)(i); *see Ex parte Montgomery*, No. 14-17-00025-CR, 2017 WL 3271088, at *3 (Tex. App.—Houston [14th Dist.] Aug. 1, 2017, pet. ref'd) (mem. op., not designated for publication) (explaining aggravated sexual assault and sexual assault have same limitations period and limitations period for sexual assault is eliminated if article 12.01(1)(C)(i) requirements are satisfied); *cf. Dallas Cty. Dist. Attorney's Office v. Hoogerwerf*, No. 2-05-034-CV, 2005 WL 3436557, at *2 (Tex. App.—Fort Worth Dec. 15, 2005, no pet.) (mem. op.) (explaining statute of limitations for offense of sexual assault "where the identity of the assailant is readily ascertained" is ten years from commission of offense). Article 12.01(1)(C)(i) does not impose "a duty on the State to look for a match" or a temporal limit on the investigation. *See Ex parte Lovings*, 480 S.W.3d 106, 111–12 (Tex. App.—Houston [14th Dist.] 2015, no pet.). Nevertheless, each of the three prongs set forth in article 12.01(1)(C)(i) must be met for there to be no limitations period for the offense. *See Ex parte S.B.M.*, 467 S.W.3d 715, 719 (Tex. App.—Fort Worth 2015, no pet.).

10

Here, appellant does not dispute that biological matter was collected and subjected to forensic DNA testing. *See* TEX. CODE CRIM. PROC. ANN. art. 12.01(1)(C)(i). Rather, he asserts that the evidence presented at the habeas hearing did not include forensic DNA testing results or reports to show that the biological matter collected and tested did not match any person whose identity was readily ascertained as article 12.01(1)(C)(i) requires. *See id.*; *Ex parte S.B.M.*, 467 S.W.3d at 719. Specifically, appellant asserts that the record does not include any "CODIS type evidence" or "Crime Lab analysis report." The State responds that "the forensic DNA testing results show[ed] that the biological material collected did not match the [complainant] or any other person whose identity is readily ascertained, in this case [appellant]." (Emphasis omitted.)

At the hearing, the parties stipulated to the facts contained in the HPD offense report that the trial court admitted into evidence without objection. That offense report showed that emergency personnel transported the complainant to a hospital "to have a rape kit done," a "rape/sexual assault kit" was submitted for forensic testing, and laboratory testing was completed "in association with a request for outsourced – DNA analysis" and "a request for CODIS analysis." In April 2014, Officer Lewis received the case "for further investigation regarding a CODIS match confirmation." In 2017, Officer Vo interviewed the complainant, who identified appellant in a photographic array. Vo also obtained two buccal swabs from

11

appellant and requested a DNA analysis of the buccal swabs and a comparison of "the DNA to the male DNA that was found in the complainant's sexual assault kit."

Article 12.01(1)(C)(i) requires "testing results" of forensic DNA testing of the collected biological matter. *See* TEX. CODE CRIM. PROC. ANN. art. 12.01(1)(C)(i); *Ex parte S.B.M.*, 467 S.W.3d at 719; *see also* TEX. GOV'T CODE ANN. § 411.141 (defining, for purposes of state DNA database, "DNA record" as "results of a forensic DNA analysis performed by a DNA laboratory," including "a DNA profile and related records"). The testing results are necessary to show that the tested biological matter did not match the complainant or any person whose identity is readily ascertained. *See* TEX. CODE CRIM. PROC. ANN. art. 12.01(1)(C)(i).

Evidence showing the assignment of the case for further investigation "regarding a CODIS match confirmation" and a request to analyze appellant's buccal swabs for comparison to "the male DNA that was found in the complainant's sexual assault kit" does not constitute evidence of forensic DNA testing results to show that the biological matter collected in the complainant's "sexual assault kit" did or did not match a person whose identity is not readily ascertained. *See Ex parte S.B.M.*, 467 S.W.3d at 719 (concluding article 12.01(1)(C)(i) did not apply when biological matter was collected and tested but testing results were not attainable); *cf. Ex parte Lovings*, 480 S.W.3d at 108 (noting DNA analysis identified DNA of complainant and male donor, and CODIS provided "'hit' between appellant's DNA

12

and the DNA of the male donor"). We conclude that the record in the instant case does not support a conclusion that article 12.01(1)(C)(i) applies.

We note that, in the trial court, the parties focused on the meaning of "readily ascertained" and the trial court concluded that appellant was not "readily ascertainable at the time." The statute requires forensic DNA testing results that "show that the matter does not match the victim or any other person whose identity is readily ascertained," *not* "readily ascertainable." *See* TEX. CODE CRIM. PROC. ANN. art. 12.01(1)(C)(i); *Ex parte Lovings*, 480 S.W.3d at 112. However, we need not determine in the instant case whether and when appellant's identity was "readily ascertained" because there is no statutorily required evidence of forensic DNA testing results.[6] *See* TEX. R. APP. P. 47.1. Accordingly, we hold that the trial court erred in denying appellant's application for a writ of habeas corpus.

We sustain appellant's issue.[7]

---

[6] That being said, Officer Foley stated in the offense report that the complainant provided appellant's first name—"Maurice"—at the scene. The complainant later provided a description of "Maurice" to Officer Walding, who had contacted the complainant by telephone. Further, witnesses at the scene provided the license plate number of appellant's car and when Foley "ran the license plate number," the information he received indicated that "there was a city warrant on the vehicle for a Maurice Edwards[, date of birth] 11-13-77," along with a Texas driver's license number. The report also shows that Foley "ran the criminal history on [Maurice Edwards] and the [information] matched" the information that the complainant had given. From this, Foley ascertained "one possible suspect" as "Edwards, Maurice Ellis."

[7] The State argues that appellant's "prayer for relief and discharge is ineffectual" because, even if appellant is correct, the appropriate remedy is "to reverse and remand for a new hearing, at which time the State would offer the [DNA] testing

13

## Conclusion

We reverse the order of the trial court denying appellant habeas relief, grant the requested habeas relief, and remand the case to the trial court for further proceedings consistent with this opinion.

Julie Countiss
Justice

Panel consists of Justices Lloyd, Landau, and Countiss.

Publish.   TEX. R. APP. P. 47.2(b).

---

results, thereby remedying the complained-of error." The State, however, does not present any argument or authority in support of remanding the case to the trial court for a new hearing on appellant's application for habeas relief.

14