**Ex parte John Lewis CHAPMAN.**

**No. 64672.**

Court of Criminal Appeals of Texas, Panel No. 1.

July 16, 1980.

Sherman A. Kusin, Texarkana, for appellant.

Neal Birmingham, Dist. Atty., Linden, Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P. J., and PHILLIPS and CLINTON, JJ.

## OPINION

CLINTON, Judge.

This is a purported appeal from an order remanding petitioner to custody for extradition to the State of California. However, at the outset, we are confronted with a threshold jurisdictional issue.

Petitioner was arrested in Cass County on January 14, 1980, for the offense of driving while intoxicated; a routine check revealed that he was in fact wanted in the State of California for the felony offense of possession of both piperidine and cyclohexanone, and a combination thereof, with the intent to manufacture phencyclidine (PCP). West's Ann.Health & Safety Code, § 11383 (Cal.1976).

Upon being notified that petitioner had been apprehended, California authorities lodged a detainer against him, a fugitive warrant authorized by both Articles 51.03 and 51.13, §§ 14 and 15, V.A.C.C.P. was issued by a magistrate and executed immediately.[1]

The following day, petitioner was brought before the District Court for the Fifth Judicial District, then in session in Cass County, and the proceeding contemplated by Article 51.13, § 10,[2] supra, was held. We are constrained to note that this proceeding was prematurely held since the Governor's warrant of arrest had not yet been issued—the "such warrant" in § 10 referring back to the warrant of arrest issued by the Governor of Texas pursuant to § 7. In the event, according to unchallenged findings of the court, during the proceeding petitioner was informed by the court, *inter alia*, of California's detainer and the offense it had alleged against him and he had the right to demand and procure counsel to test the legality of his arrest or

---

1. The actual warrant is not in the record before us, but we are informed by findings of the court below that bail was set in the amount of $25,-000.

2. Section 10 provides:

   "No person arrested upon such warrant shall be delivered over to the agent whom the Executive demanding him shall have appointed to receive him unless he shall first be taken forthwith before a judge of a court of record in this State, who shall inform him of the demand made for his surrender and of the crime with which he is charged, and that he has the right to demand and procure legal counsel; *and if the prisoner or his counsel shall state that he or they desire to test the legality of his arrest, the judge of such court of record shall fix a reasonable time to be allowed him within which to apply for a writ of habeas corpus.* When such a writ is applied for, notice thereof, and of the time and place of hearing thereon, shall be given to the prosecuting officer of the county in which the arrest is made and in which the accused is in custody, and to the said agent of the demanding State."

382

he could waive that right and agree to be surrendered to California under *id.* § 25a. When petitioner elected not to waive his rights, the Governor's warrant not extant, the court ordered bail reduced and set a hearing "to test the legality of his arrest." Posting bond, petitioner was released from confinement January 16, 1980.

The date set for hearing came and went without issuance of the Governor's warrant of arrest. Petitioner and his attorney appeared and were advised they would be informed of another setting, presumably after receipt of the warrant. The Governor's warrant was issued on March 10, 1980 and on March 25, 1980, the trial court entered an order setting a hearing on April 8, 1980 "to determine whether extradition will be granted or denied."[3]

At the hearing held as set, the State authenticated and offered as a single exhibit the entire file of the Sheriff on the matter, including the Governor's warrant and all its supporting papers. Over two objections,[4] the whole file was admitted. The custodian of the file conceded on cross examination that he could not identify petitioner as the subject of his file. Thereupon the trial court ordered petitioner be remanded to the custody of the State of California for purposes of extradition.[5] Petitioner was again admitted to bail pending the outcome of the instant appeal.

At the special written request of the State, the trial court made its findings of fact and conclusions of law which recite, *inter alia,* that:

3. Elsewhere the order recited that a finding that "the papers on file are in proper order and contain all of the prerequisites of law to invoke the jurisdiction of the Court to hear and determine the case." However, as we shall discuss, an application for writ of habeas corpus was not among the papers on file.

4. The first was directed to inclusion of "alleged regulations or statutes or rules of the State of California, since it does not comply with Article 37.18 [sic] of the Vernon's Annotated Code, statute bar, [sic] with the provision of 28 U.S. 1738, 1739." The *second objection was to in-*clusion of a January 23, 1980 affidavit of Los Angeles Detective Robert A. Miguel mentioning what counsel asserted "is in support of the

"2. This case is not subject to appeal. This is a proceeding under C.C.P. Article 51.13, Uniform Criminal Extradition Act. Such act does not provide for an appeal or an appeal process. *Any challenge or test of the procedures under the act must therefore be by means of applying for a Writ of Habeas Corpus as authorized by Section 10 of the act. If the writ had been applied for, appeal could have been taken in the manner authorized by law in the appeal of Habeas Corpus cases; however, since no application for a Writ was applied for and no direct appeal is provided in the Act, the Defendant cannot appeal and his attempted appeal should be disallowed.* This would be true even though the Defendant might allege points of error that if an appeal were authorized might require a reversal or modification.

\*　\*　\*　\*　\*　\*

"4. By failing to test the legality of his arrest by applying for a Writ of Habeas Corpus the Defendant has waived all right to resist extradition including his right of appeal."

After a thorough examination of this record, we agree with the court. The factual developments from initial arrest to extradition order have been reviewed at some length to provide the context in which the result is reached, as well as to circumscribe roles and time and effort in extradition matters.

That the proper, indeed, the only, vehicle for testing the legality of an arrest and detainment pursuant to a Governor's

Amended Complaint Felony" dated February 4, 1980, the contention apparently being that the affidavit purports to verify a fact that had not yet occurred.

5. *Inter alia,* the order finds that petitioner as he appeared in open court is "one and the same person as the person wanted in California and named in the Governor's Warrant" and further declares that petitioner "has not challenged the Governor's Warrant or made application for a Writ of Habeas Corpus to test the legality of his arrest or raise any affirmative defenses; therefore nothing is before the Court to be decided."

warrant is the filing of an application for writ of habeas corpus is well settled. See generally EXTRADITION, 25 Tex.Jur.2d, § 30 at 176–179, and Article 51.13, § 10, supra. The judge of a court of record before whom an arrestee is brought pursuant to § 10 performs a function that is more magisterial than judicial in nature and purpose. Thus, the judge warns the arrestee of his rights in the premises of extradition, and ascertains his desires with respect to exercising them. The judge makes no judicial determination whatsoever in this proceeding. See *Ex parte Sullivan*, 534 S.W.2d 140 (Tex.Cr.App.1976) and *Ex parte Bennett*, 442 S.W.2d 373 (Tex.Cr.App.1969). It is but the second step in implementing the statutory scheme for due process in extradition matters. Thus, as explicated in *Ex parte Hagler*, 161 Tex.Cr.R. 387, 278 S.W.2d 143 (1955):

> "It matters not what positions the litigants took at the hearing, the fact remains that the law guarantees that a citizen shall not be sent to a foreign State for trial until the following steps have been taken, to-wit: (1) The Governor of this State shall issue a warrant which orders him delivered to the agent of the demanding State, (2) *He shall be given an opportunity to apply for a writ of habeas corpus*, and (3) He shall be given an opportunity to appeal to this Court from an adverse ruling in the trial court.
>
> "The appellant here has waived none of these guarantees which the law accords him, and we are without authority to waive any of these essential steps for him."

*Id.* at 144–45.

The petitioner here, unlike his counterpart in *Hagler*, has clearly waived his right to proceed to the third step alluded to above, the right to appeal, by failing to

avail himself of the second step "opportunity." That the court below gratuitously set and held the hearing and entered the order, as we have described *ante*, does not put petitioner in the posture of an applicant for habeas corpus whose prayer for relief has been denied for appellate purposes.[6] In a routine extradition matter the courts of record of this State are not called upon to review the particular Governor's warrant to determine whether extradition *should* be granted—that determination has already been made by the Governor. Indeed, in such situations those courts are not called upon to make any determination other than by proper motion for writ of habeas corpus challenging legality of arrest under the warrant. In the absence of any motion raising the issue, we can only regard the gratuitous actions of the court below as reflecting judicious caution, and we review neither on a purported appeal from them.

The purported appeal must be dismissed and it is so ordered.

---

**6.** We are well aware that a motion for writ of habeas corpus is not always required to activate the constitutional and statutory power of a district or county court judge to issue the writ. For example, Articles 11.16 and 11.17, V.A.C.C.P. authorize a judge, if within his jurisdictional power, to issue the writ on his own motion, to take the initiative in order to examine situations in which he "has knowledge" of

illegal confinement or restraint or either is made to "appear[ ] by satisfactory evidence" along with certain specified other factors. However, we are satisfied that the order for hearing rendered in this case is not the functional equivalent of a writ of habeas corpus issued on the basis of either exceptional grant of authority.