Ex parte Ricardo Allen SANCHEZ.

No. 03–98–00667–CR.

Court of Appeals of Texas, Austin.

April 1, 1999.

James H. Kreimeyer, Belton, for appellant.

Arthur Cappy Eads, Dist. Atty., Sean K. Proctor, Asst. Dist. Atty., Belton, for State.

Before Justices JONES, B.A. SMITH and YEAKEL.

JONES, Justice.

Ricardo Allen Sanchez applied for a writ of habeas corpus to contest his extradition to Michigan. The writ issued, and after a hearing the relief sought was denied. Sanchez appeals from the extradition order. *See* Tex. R.App. P. 31.1.

In March 1980, Sanchez was convicted in Michigan for armed robbery and possession of a firearm during a felony. He was sentenced to an indefinite term of imprisonment of from three to ten years for the robbery, and to a prison term of two years for the weapons offense. In August 1982, Sanchez escaped from the Michigan Parole Camp and traveled to Milam County, Texas, where he has been living ever since. Sanchez was arrested in McLennan County in August 1987. What happened then is not clear. An affidavit supporting the demand for extradi-

tion states that Michigan authorities were informed of Sanchez's arrest and attempted to place a detainer on him in McLennan County, but there was a paperwork failure and Sanchez was released. Sanchez's wife testified that he was ordered extradited to Michigan by a McLennan County court, but no one from Michigan came to get him.[1] Whatever the circumstances of his 1987 release, Sanchez remained at large until he was arrested in Bell County in August 1998 and the current extradition proceedings began.

■ Sanchez's brief raises two issues, the first of which is whether the State proved that he is a fugitive. Introduction of the governor's warrant created a prima facie case authorizing extradition. *Ex parte Cain*, 592 S.W.2d 359, 362 (Tex.Crim.App.1980). Sanchez argues that this showing was overcome with regard to his status as a fugitive because the evidence demonstrates that Michigan authorities have known or should have known where he was since August 1987, when he was arrested and held for Michigan in McLennan County.

■ The Uniform Criminal Extradition Act does not formally define "fugitive." *See* Tex.Code Crim. Proc. Ann. art. 51.13, § 1 (West 1979). A working definition is found, however, in section two of the act, which provides, "[I]t is the duty of the Governor of this State to have arrested and delivered up to the Executive Authority of any other State of the United States *any person charged in that State with treason, felony, or other crime, who has fled from justice and is found in this State.*" *Id.* § 2 (emphasis added). All that is necessary to make a person a fugitive from justice is that he leave a state under whose laws he has incurred guilt. *Strachan v. Colon*, 941 F.2d 128, 130 (2d Cir.1991) (construing Extradition Clause of U.S. Constitution). The court of criminal appeals has held that evidence the alleged fugitive left the demanding state with the knowledge and permission of that state's authorities does not alter his status as a fugitive from justice. *See Ex parte Garvey*, 133

---

**1.** While not evidence, Sanchez's counsel informed the district court that he had seen the McLennan County records from the 1987 extra-

dition proceeding, including the habeas corpus application and the opinion of the court of appeals affirming the extradition order.

Tex.Crim. 560, 112 S.W.2d 747, 748 (1938); *Ex parte Crane,* 115 Tex.Crim. 168, 29 S.W.2d 357, 358 (1930). It is undisputed that Sanchez was charged with and convicted of a felony in Michigan, escaped from custody, and fled to Texas. We answer Sanchez's first issue by holding that he was shown to be a fugitive from justice within the meaning of the extradition act.

■ Sanchez's second issue asks whether Michigan is estopped from seeking his extradition because it failed to take him into custody in 1987. He argues that it is "grossly unfair that a demanding state may fail to exercise its right to obtain the custody of an alleged fugitive, make no effort to determine what is being done about their governor's request for rendition and then after an additional 11 years seek to exercise the seizure of Sanchez for the same matter."

■ The State contests Sanchez's summary of the pertinent facts, but his argument fails even if the facts are as he states them. The extradition act allows only four issues to be raised in the asylum state: whether the extradition documents are in order, whether the applicant has been charged with a crime in the demanding state, whether the applicant is the person named in the request for extradition, and whether the applicant is a fugitive. *State ex rel. Holmes v. Klevenhagen,* 819 S.W.2d 539, 543 (Tex.Crim.App. 1991) (citing *Michigan v. Doran,* 439 U.S. 282, 289, 99 S.Ct. 530, 58 L.Ed.2d 521 (1978)). The courts of the asylum state are "without authority to consider equitable issues." *Id.* In rejecting Sanchez's estoppel argument, the district court observed that it was not sitting as a court of equity.

We are referred to no Texas cases on point, but it appears to be generally agreed that a state does not forfeit its right to demand extradition by failing to act at the earliest opportunity. *See Strachan,* 941 F.2d at 131–32 (forty-four year delay; previous opportunities to extradite); *In re McBride,* 115 Cal.App.2d 538, 254 P.2d 117, 119–20 (1953) (eighteen year delay; previous opportunities to extradite). *But see Bowman v. Woods,* 46 Ill.2d 572, 264 N.E.2d 151, 153 (1970) (demanding state forfeited extradition right by declining other opportunities during previous thirteen years). In light of the holdings in *Doran* and *Klevenhagen,* the district court properly refused to find that Michigan was estopped from demanding Sanchez's extradition.

The district court's order is affirmed.