NO. 07-02-0141-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

NOVEMBER 20, 2002
_____

STEVEN BROOKS,

Appellant

v.

THE STATE OF TEXAS,

Appellee
_____

FROM THE 140TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2002-001,636; HON. JIM BOB DARNELL, PRESIDING
_____

Before QUINN,  REAVIS, and JOHNSON, JJ.

In two issues, appellant Steven Brooks challenges the trial court's denial of his petition for writ of habeas corpus.  Through that document he contested his arrest under a governor's warrant and the right of the State of Illinois to extradite him to be tried for the offense of robbery.  Before us, he asks 1) whether the State of Illinois forfeited its right to enforce extradition and 2) whether the State of Texas must extradite a fugitive to another state when, under the same circumstances, the requesting state would not extradite a fugitive to Texas.  We affirm the order of the trial court.

## Background

In May 1999, appellant was arrested in Travis County for a robbery alleged to have been committed in Cook County, Illinois. He waived extradition and was held in jail for six or seven days but then released because no agent from Illinois came to gather him. In October 1999, appellant was arrested a second time in Burnet County for the same offense. He waived extradition and was held for ten days. Once again, he was released when no agent from Illinois arrived to claim him. Then, in December 2001, he was arrested a third time in Lubbock County. Appellant waived extradition once again and was detained for eight or nine days before being released for the same reasons as before. Finally, he was arrested a fourth time in February 2002. He initially waived extradition and was held for three days in the Lubbock County jail. Yet, when no agent arrived to pick him up, he withdrew his waiver with the trial court's permission and contested the warrant by filing an application for writ of habeas corpus. The trial court denied the application.

## Issue One - Forfeiture of Right to Extradite

In his first issue, appellant argues that Illinois forfeited its right to extradite him because of the previous three incomplete extraditions. We disagree and overrule the issue.

Extradition proceedings are intended to be limited in scope so as to facilitate transfer of custody between states. Thus, it has been held that the court in the asylum state may only determine 1) whether the extradition documents are in order on their face, 2) whether the petitioner has been charged with a crime in the demanding state, 3) whether the petitioner is the person named in the request for extradition, and 4) whether the petitioner

2

is a fugitive. *Michigan v. Doran,* 439 U.S. 282, 288-89, 99 S. Ct. 530, 535, 58 L. Ed.2d 521 (1978); *Ex parte Potter,* 21 S.W.3d 290, 294 (Tex. Crim. App. 2000); *Stelbacky v. State,* 22 S.W.3d 583, 587 (Tex. App.—Amarillo 2000, no pet.). In this instance, appellant stipulated that the answers to each of the foregoing questions was yes.

Nevertheless, appellant insists that because the State of Illinois had caused him to be arrested three times before his current arrest but failed to complete extradition during those three prior arrests, he now cannot be extradited. In short, it forfeited its right to have him returned, according to appellant. And, this is allegedly so because precedent from Illinois itself holds as much.

The precedent to which appellant alludes is *People ex rel. Bowman v. Woods*, 46 Ill.2d 572, 264 N.E.2d 151 (1970). There, the State of Alabama had Woods arrested a total of three times, and the delay between the first and third arrests was 13 years. Given these circumstances, the court held that "[w]hile normally the mere passing of time will not discharge [a fugitive], at a certain point and after a certain number of incompleted extraditions, we must find that [Alabama] . . . forfeited its right to enforce extradition." *Id.* at 575-76. Yet, not only has an Illinois appellate court questioned the continued vitality of *Woods*, *e.g., People v. Martin*, 208 Ill. App. 3d 857, 873, 567 N.E.2d 1097, 1100 (Ill. App. Ct. 1991), but also no Texas court has deigned to follow *Woods*.[1]

Indeed, because the United States Supreme Court in *Doran* specified that only the four issues it stated therein (and which we mentioned above) can be raised in an extradition proceeding, our own Court of Criminal Appeals has ruled that a trial court "was

---

[1]It was noted in *Martin*, that *Woods* was decided long before *Doran*. *People v. Martin*, 208 Ill. App. 3d 857, 873, 567 N.E.2d 1097, 1100 (Ill App. Ct. 1991).

3

without authority to consider equitable issues" when deciding whether one awaiting extradition should be granted habeas relief. *State ex. rel. Holmes v. Klevenhagen*, 819 S.W.2d 539, 543 (Tex. Crim. App. 1991) This directive, in turn, served as the basis for the intermediate court of appeals in *Ex parte Sanchez*, 987 S.W.2d 951 (Tex. App.—Austin 1999, pet. ref'd, untimely filed), to conclude that "a state does not forfeit its right to demand extradition by failing to act at the earliest opportunity." *Id.* at 953. Consequently, the *Sanchez* court rejected the argument that Michigan was "estopped" from securing extradition because it failed to take custody of the fugitive when he was previously arrested in 1987. *Id.*[2]

Thus, in Texas we have the Court of Criminal Appeals stating that equitable issues have no place in an extradition proceeding. So too do we have an intermediate appellate court holding that previous delay in extraditing fugitives does not estop the state from later pursuing extradition. To this we add the general rules that 1) limitations, laches and estoppel may not be invoked against a state, *State v. Durham*, 860 S.W.2d 63, 67 (Tex. 1993), 2) the forfeiture of rights is not favored, *Affiliated Capital Corp. v. Southwest, Inc.*, 862 S.W.2d 30, 33 (Tex. App.--Houston [1st Dist.] 1993, writ denied), and 3) a court considering habeas relief by one awaiting extradition can do no more than address the four subjects specified in *Doran* (none of which encompass forfeiture, estoppel and like

---

[2]Appellant suggests that a conflict of authority exists in Texas regarding the applicability of *Woods*. *Sanchez* is cited as an example of one intermediate appellate court rejecting the Illinois decision while *Ex parte McClintick*, 945 S.W.2d 188 (Tex. App.—San Antonio 1997, no writ) is purportedly an example of a court approving of *Woods*. However, the passage in *McClintick* to which appellant alludes merely states; "[u]nlike the situation in . . . *Woods* . . . here we are not faced with a lengthy delay between extradition proceedings that would raise a fairness question." *Id.* at 190-91. In saying that it was not faced with a situation like that in *Woods*, the San Antonio Court of Appeals hardly "recognized that a lengthy delay between extradition proceedings 'would raise a fairness question,'" as appellant suggests. It just said that the issue was not before it. So we perceive no conflict of authority in Texas.

4

theories). And, in contemplating the sum of the foregoing rules and directives, we cannot but reject appellant's contention at bar. Delay in completing prior attempts at extradition, even though the fugitive awaited extradition after having been arrested several times, does not alone bar later attempts at extradition.

### *Issue Two - Comity*

Via his second issue, appellant invokes the theory of comity to prevent his extradition. Through this theory he would be insulated because Illinois allegedly would not have extradited him to Texas had Texas been seeking him under similar circumstances. We overrule the issue.

Comity is a principal of mutual convenience whereby one state or jurisdiction gives effect to the laws and judicial decisions of another out of deference or respect. *Smith v. Lanier,* 998 S.W.2d 324, 336 (Tex. App.—Austin 1999, pet. denied). Furthermore, it has been held that Texas should not extend comity to another state that would not extend comity to Texas under the same or similar circumstances. *K.D.F. v. Rex,* 878 S.W.2d 589, 594 (Tex. 1994).

Yet, in asserting state concepts of comity to bar his extradition, appellant forgets that extradition is not a matter of state law. Rather, it arises from the United States Constitution. According to article four, section two, clause two of that document:

> A person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime.

Congress furthered this constitutional directive by enacting federal legislation declaring that

5

[w]henever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District, or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District, or Territory to which such person has fled shall cause him to be arrested and secured, and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear. . . .

18 U.S.C.A. §3182 (2000). More importantly, the United States Supreme Court has indicated clearly that the wording of §3182 is not permissive but mandatory. That this is so is illustrated not only by the court italicizing the word "shall" when quoting the statute in *Doran*, 439 U.S. at 287-88, 99 S. Ct. at 534, but also by holding that

[o]nce the governor has granted extradition, a court considering release on habeas corpus *can do no more than decide* (a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive.

*Id.* at 439 U.S. at 289, 99 S.Ct. at 534 (emphasis added). In short, extradition is mandated by both the Constitution and federal law. And, being so mandated, neither can be avoided through invocation of some state doctrine or law without running afoul the Supremacy Clause of the United States Constitution. *House v. Mayes,* 219 U.S. 270, 282, 31 S.Ct. 234, 236, 55 L.Ed.2d 213 (1911) (holding that a state may exercise authority that is not in conflict with the federal constitution). So irrespective of what Texas state courts may say about Texas theories of comity, those theories cannot be invoked to supercede or alter the

6

mandate of article four, section two, clause two of the Constitution or §3182 of title 18 of the United States Code.

Next, to the extent that appellant suggests that "extradition is, ultimately a matter of comity or compact between the states," we have to disagree. Admittedly, the United States Supreme Court has described the need for comity among the states as the reason for article four, section two, clause two of the United States Constitution. *Doran,* 439 U.S. at 287-88, 99 S.Ct. at 534-35. Yet, it did so not as a means of suggesting that the states are free to choose whether to extradite those accused of crimes but as a means of illustrating the need for states to cooperate with each other. Simply put, the clause was enacted to prevent one state "from becoming a sanctuary for fugitives from justice of another state and thus 'balkanize' the administration of criminal justice among the several states." *See id.* So, those drafting the constitution incorporated this view of comity in "mandatory language" via enactment of article four, section two, clause two of the Constitution. *Id.* And, again, because it is now mandated by the Constitution rather than notions of deference and respect, one state cannot ignore the directive merely because another improperly did so. In those simple yet meaningful words of mothers throughout this nation, "two wrongs do not make a right."

Accordingly, the order of the trial court denying the writ of habeas corpus is affirmed.

Brian Quinn
Justice

Publish.

7