FILED
*October 6, 2015*
Third Court of Appeals
Jeffrey D. Kyle
Clerk

ACCEPTED
03-15-00284-CR
7216698
THIRD COURT OF APPEALS
AUSTIN, TEXAS
10/2/2015 6:42:50 PM
JEFFREY D. KYLE
CLERK

No. 03—15—00284—CR

IN THE TEXAS COURT OF APPEALS
THIRD DISTRICT
AT AUSTIN

RECEIVED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
10/2/2015 6:42:50 PM
JEFFREY D. KYLE
Clerk

## EX PARTE LEONARD RAY BARKER

Appeal from Cause Number D-1-DC—15—100034
331st Judicial District Court, Austin, Travis County, Texas
Honorable David Crain, Judge Presiding
Honorable Leon Grizzard, District Magistrate Presiding

## APPELLANT'S BRIEF

TO THE HONORABLE THIRD COURT OF APPEALS:

Comes now Appellant Leonard Ray Barker, by and through his appointed counsel Paul M. Evans, and files this, his Appellant's Brief, in compliance with the Texas Rules of Appellate Procedure.

**APPELLANT HEREBY REQUESTS ORAL ARGUMENT.**

Respectfully submitted,

___/s/ Paul M. Evans_____
Paul M. Evans
Attorney for Appellant
811 Nueces Street
Austin, Texas 78701
(512) 569-1418
(512) 692-8002 FAX
paulmatthewevans@hotmail.com
SBN 24038885

1

## Identities of the Parties and Counsel

| | |
|---|---|
| Presiding Judge: | Honorable David Crain |
| | Honorable Magistrate Leon Grizzard |
| Appellant: | Leonard Ray Barker |
| Trial Counsel: | Paul M. Evans<br>811 Nueces Street<br>Austin, Texas 78701 |
| Appellate Counsel: | Paul M. Evans<br>811 Nueces Street<br>Austin, Texas 78701 |
| Appellee: | State of Texas |
| Trial Counsel: | Dayna L. Blazey<br>Brandon Grunewald<br>Assistant District Attorneys<br>Travis County District Attorney<br>P.O. Box 1748<br>Austin, Texas 78767 |
| Lead Appellate Counsel: | Rosemary Lehmberg<br>District Attorney<br>c/o Appellate Division<br>Travis County District Attorney<br>P.O. Box 1748<br>Austin, Texas 78767 |

# Table of Contents

Identities of the Parties and Counsel      2

Table of Contents      3

Index of Authorities      4

Statement of the Case      6

Issues Presented      7

Statement of Facts      7

Summary of Arguments      16

Issue Number One—The trial court abused its discretion by denying      17
Appellant's application for writ of habeas corpus, in that Appellant
was not a "fugitive" at the time the Governor's Warrant was issued.

Issue Number Two—The trial court abused its discretion by denying      24
Appellant's application for writ of habeas corpus, because Appellant
was entitled to release from custody as of January 19, 2015.

Prayer      26

Certificate of Service      27

Certificate of Compliance      27

# Index of Authorities

**Federal Constitution**

Article IV, Section 2…………………………………………………………….17

Sixth Amendment…………………………………………………………….14

**Federal Cases**

*California v. Superior Court of California*, 482 U.S. 400 (1987)…………17

*Fex v. Michigan*, 507 U.S. 43 (1993)……………………………...…..19

*United States v. Henson*, 945 F.2d 430 (1st Cir. 1991)……………...…..19

*Michigan v. Doran*, 439 U.S. 282 (1978)…………………………..17-18, 20

*New Mexico ex rel. Ortiz v. Reed*, 524 U.S. 151 (1998)……………...…17

*Young v. Mabry*, 471 F.Supp. 553 (E.D. Ark. 1978)………………..…..23

**Texas State Statutes**

Code of Criminal Procedure § 51.05……………………...…..7, 15-16, 24

Code of Criminal Procedure § 51.07……………...…………..7, 15-16, 24

Code of Criminal Procedure § 51.13……………………...…..7, 15-16, 24

Code of Criminal Procedure § 51.14……………………….....15, 20, 23

Government Code § 54.976……………………………………...….…7

**Texas Cases**

*Ex parte Brown*, 450 S.W.2d 647 (Tex.Crim.App. 1970)……………..……18

*Bryant v. State*, 819 S.W.2d 927 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd)……………………………………………….…19

*Ex parte Cain,* 592 S.W.2d 359 (Tex.Crim.App. 1980)……………….…18

*Ex parte Chapman*, 601 S.W.2d 380 (Tex.Crim.App. 1980)………..……18

*Ex parte Harrison*, 568 S.W.2d 339 (Tex.Crim.App. 1978)……….....…….22

*Ibarra v. State*, 961 S.W.2d 415 (Tex.App.—Houston [1st Dist.] 1997, no pet.)…………………………………………………….…18

*State ex rel. Holmes v. Klevenhagen*, 819 S.W.2d 539 (Tex.Crim. App. 1991)………....…………………………………………..17, 20

*Kniatt v. State*, 206 S.W.3d 657 (Tex.Crim.App. 2006)……………….…18-19

*Ex parte Lancaster*, 501 S.W.2d 904 (Tex.Crim.App. 1973)………....…...18

*Lanz v. State*, 815 S.W.2d 252 (Tex.App.—El Paso 1991, no pet.)………………………………………………………………15, 25

*Ex parte Lekavich*, 145 S.W.3d 699 (Tex.App.—Ft. Worth 2004, no pet.)……………………………………………………………17

*Morganfield v. State*, 919 S.W.2d 731 (Tex.App.—San Antonio 1996, no pet.)……………………………………………………….…19

*Ex parte Potter*, 21 S.W.3d 290 (Tex.Crim.App. 2000)…………………..…17

*Ex parte Robertson*, 151 Tex. Crim. 635, 210 S.W.2d 593 (1948)………………………………………………………………..…20

*Ex parte Sanchez*, 642 S.W.2d 809 (Tex.Crim.App. 1982)………..18-19, 24

*Ex parte Sanchez*, 987 S.W.2d 951, 953 (Tex.App.—Austin 1999, pet. ref'd, untimely filed)…………………………………………..…..20

*Washington v. State*, 326 S.W.3d 701 (Tex.App.—Houston [1st Dist.] 2010, no pet.)……………………………………………………18-19

**Other Cases**

*State of Kansas v. Holeb*, 188 Neb. 319, 196 N.W.2d 387 (1972)………..22

## Statement of the Case

On January 22, 2015, Governor Terence R. McAuliffe of the Commonwealth of Virginia submitted to the Governor's Office of the State of Texas a request for interstate rendition for Appellant, Leonard Ray Barker. On February 6, 2015, Governor Greg Abbott issued a Texas Governor's warrant to extradite Appellant from Texas to Virginia. The warrant was forwarded to the Sheriff of Travis County, where Appellant was being held in custody. **RR4** SX # 2; **CR1** 8-28.[1] Through appointed counsel, Appellant filed an "Application for Writ of Habeas Corpus." **CR1** 3-48. On April 14 and 29, 2015, the Honorable Leon Grizzard, District Court Magistrate for Travis County, entertained a hearing on the application. *See generally* **RR2**, **RR3**. The magistrate denied the requested relief.

---

[1] Introduced into evidence as SX # 2, the Governor's Warrant and supporting materials were also included in the Clerk's Record, appended to Appellant's petition for habeas relief as "Exhibit A." **RR2** 5; **RR4** SX # 2; **CR1** 8-28. In the present Brief, for ease of reference, citations to specific matters found in the Governor's Warrant and supporting materials shall refer to the identical copy found in the Clerk's Record, as it offers the benefit of numeric pagination for ease of reference.

The trial court adopted the findings, conclusions, and recommendations of the magistrate. **RR3** 22-3; **CR1** 51-2; *see* Tex. Gov't. Code § 54.976(a)(4). Appellant filed timely notice of appeal. **CR1** 49. This appeal follows from the denial of habeas relief.

## Issues Presented

**Issue Number One—The trial court abused its discretion by denying Appellant's application for the writ of habeas corpus, in that Appellant was not a "fugitive" at the time the Governor's Warrant was issued:** Under the particular circumstances of the instant cause, Appellant was no longer a "fugitive" at the time the Governor's Warrant was issued. The trial court abused its discretion by denying Appellant's request for relief by way of an application for writ of habeas corpus.

**Issue Number Two—The trial court abused its discretion by denying Appellant's application for writ of habeas corpus, because Appellant was entitled to release from custody as of January 19, 2015:** Appellant appeared before a judge on October 21, 2014, regarding the detainer placed by the Commonwealth of Virginia. Under the particular circumstances of the instant cause, Appellant was entitled to a discharge from custody as of January 19, 2015, pursuant to Tex. Code Crim.Proc. §§ 51.05, 51.07, and 51.13, Sec. 15 and Sec. 17.

## Statement of Facts

The State of Texas, by and through the Governor's office, issued a Governor's Warrant on February 6, 2015, seeking to extradite Appellant to the requesting state, the Commonwealth of Virginia. At the time, Appellant was in the custody of the Travis County Jail. **RR4** SX # 2; **CR1** 8-28. Through appointed counsel, Appellant filed an "Application for Writ of Habeas Corpus," seeking his release from custody. **CR1** 3-48. On April 14, 2015, the Honorable Leon Grizzard,

7

District Court Magistrate for Travis County, initiated a hearing on this application. At the outset, the State introduced a copy of the Governor's Warrant into evidence, without objection by trial counsel. The magistrate inquired of trial counsel whether he had any objection to the "regularity" of the recitals contained therein. Trial counsel took "exception to the recital on the warrant itself" that described Appellant as a "fugitive." **RR2** 4-5; **RR4** SX # 2; **CR1** 9.

At the hearing, Appellant testified that on December 2, 2013, he was arrested in Travis County and placed in the Travis County jail, due to matters unrelated to the allegations made by the Commonwealth of Virginia. **RR2** 6.[2] On December 5, 2013, Appellant was informed by a magistrate from "JP 5"—*i.e.*, Travis County Justice of the Peace Number Five—regarding the detainer requested by Virginia. **RR2** 6-7. Appellant testified that on April 14, 2014, he ultimately resolved the unrelated matters pending against him in Travis County after accepting a plea bargain to a State Jail Felony offense. **RR2** 7; **RR4** DX # 3; **CR1** 30-40. The "Plea of Guilty" form contains the following notation underneath the signature of the trial court judge who presided over Appellant's plea: "Due to out of state holds, and/or Fed. holds, Defendant may serve sentence concurrent to any subsequent sentences and may serve S[tate] J[ail] sentence in any penal institution,

---

[2] *See also* **CR1** 30, "Judgment of Conviction by Court—Waiver of Jury Trial," "Time Credited: From 12/2/2013 to 4/14/2014;" **CR1 39**, "Docket Sheet," "Credit for B[ack] T[ime] 12-2-13 – 4-14-14."

with credits." **RR4** DX # 3; **CR1** 37. Appellant was then remanded to the Travis State Jail, operated by the Texas Department of Criminal Justice. By way of correspondence dated April 30, 2014, the Department of Criminal Justice notified the authorities in Alexandria, Virginia that Appellant was in their custody, and that his sentence would expire on December 1, 2014. **RR4** DX # 1; **CR1** 42.

Appellant testified that on May 20, 2014, in the law library of the Travis State Jail, he was presented with two documents on Texas Department of Criminal Justice letterhead: (1) "Offenders Notice of Place of Imprisonment and Request for Disposition of Indictments, Informations, or Complaints," addressed to the "Chief Prosecuting Officer" of Alexandria, Virginia; and (2) "Notice of Untried Indictment, Information, or Complaint and of Right to Request Disposition," addressed to Appellant, Leonard Barker. This latter document appears to have been signed on May 7, 2014, by Joni M. White, "IAD Administrator, Interstate Agreement on Detainers." Appellant testified he had requested this document— which he signed on May 20—with the understanding that Virginia would then be required to act upon the request as per the Interstate Agreement on Detainers. A copy of this document that was given to Appellant on the same date—marked "Offender's Copy"—was introduced into evidence. This text of this document reads in part as follows:

> Your request for final disposition will operate as a request for final
> disposition of all untried indictments, informations, or complaints on

9

the basis of which detainers have been lodged against you from the state to whose prosecuting official your request for final disposition is specifically directed. Your request will also be deemed to be a waiver of extradition with respect to any charge or proceeding contemplated thereby or included therein and a waiver of extradition to the state of trial to serve any sentence there imposed upon you, after completion of your term of imprisonment in this state, your request will also constitute a consent by you to the production of your body in any court where your presence may be required in order to effectuate the purposes of the IAD and a further consent to be voluntarily returned to the institution in which you are now confined.

**RR2** 8-12; **RR4** DX # 2; **CR1** 44-6. Appellant testified that at that time, he was told Virginia would have 180 days starting on the day of notification to have Appellant transported for resolution of his pending cases in their jurisdiction. Appellant testified that he was told on June 5, 2014, that authorities in Virginia had received the paperwork on the previous day. **RR2** 12-13.

On cross-examination by the State, Appellant was asked who gave him this information on June 5, 2014, regarding receipt of the materials in question by Virginia authorities. Appellant explained that when he arrived at the State Jail on April 25, he "brought it to their attention that [he] had a detainer" from Virginia. Appellant testified he spoke to the "lady that runs the sociology department," and she told him she would check on the detainer. Appellant was asked why he signed the second of the two documents introduced as DX # 2, *i.e.*, the "Notice of Untried Indictment, Information, or Complaint and of Right to Request Disposition." Appellant testified, "I wanted for them to go ahead and transport me to Virginia,

10

because my sentence here had been run concurrent with any other jurisdiction. And my sentence was arranged here from this jurisdiction. I had that arranged with the courts to move me so I could go ahead and get this [detainer] resolved. I've been trying to get that resolved since I found out about it." Appellant affirmed it was his intention to be sent back to Virginia to resolve his pending charges in that jurisdiction. **RR2** 13-14; **RR4** DX # 2; *see* **CR1** 37.

The State then questioned Appellant about whether or not he had been subsequently asked to sign a waiver of extradition in October of 2014. Appellant confirmed he was asked to do so, but he refused to sign a waiver of extradition at that time. Appellant testified he had made an inquiry about the request he had submitted to Virginia from "Joni in TDCJ, who was the coordinator for that," but he received no reply. Appellant further explained that in October, while he was still in the custody of the Texas Department Criminal Justice, he was brought before a judge in Walker County, where he was presented with a waiver of extradition. Appellant testified he had tried to explain at that time that he had already signed a "waiver" in May, and when he did not receive an answer as to how a new waiver would affect the request he had previously submitted in May, he refused to sign a waiver of extradition at that time. **RR2** 14-17. The hearing on Appellant's application for writ of habeas corpus was recessed so that the State could obtain records to present to the court. **RR2** 18.

Upon resumption of the hearing on April 20, 2015, trial counsel called attorney Robert Keates to testify. Keates testified he had previously represented Appellant. His representation ended with a plea bargain on April 14, 2014. Keates confirmed the recitals contained in Appellant's plea paperwork, underneath the signature of the judge who presided over Appellant's plea: "Due to out of state holds, and/or Fed. holds, Defendant may serve sentence concurrent to any subsequent sentences and may serve S[tate] J[ail] sentence in any penal institution, with credits." Keates was aware during the time he represented Appellant that his client had a detainer from Virginia:

> TRIAL COUNSEL: And on a scale of 1 to 10, how much of a concern was that [detainer] to [Appellant] during the period you represented him?
>
> MR. KEATES: I would say either a 9 or a 10. And in some situations, he was more concerned about that than the actual cases at hand.

**RR3** 5-8; **RR4** DX # 3; **CR1** 37. Keates testified that it was his understanding at the time that Appellant wished to waive extradition to Virginia, and he recalled some measures he took on Appellant's behalf to ensure that the extradition process was moving along. **RR3** 8-9.

On cross-examination by the State, Keates was questioned about the recital in the plea paperwork, *i.e.*, "Due to out of state holds, and/or Fed. holds, Defendant may serve sentence concurrent to any subsequent sentences and may serve S[tate] J[ail] sentence in any penal institution, with credits." Keates testified that it was

12

"probably pretty close to the truth" that Appellant would not have entered a plea bargain on his Travis County charge if this language had not been expressly incorporated into the plea bargain agreement. Keates understood this language to mean that if Appellant were to be extradited to another jurisdiction in the meantime, his time spent incarcerated in that jurisdiction would still count towards his sentence received in Travis County. **RR3** 9-10; **RR4** DX # 3; **CR1** 37.

Appellant again took the witness stand for redirect examination. Appellant confirmed that he "received paperwork to execute an [I]nterstate [A]greement [D]etainers [A]ct request for Virginia to deal with their holds on [him], back in May of 2014." Appellant recounted the specific date of October 21, 2014, when he was brought before "Judge Hale, in Huntsville, Walker County." Appellant testified the judge asked him if he wanted "to sign a waiver to proceed with the extradition." Appellant testified he tried to explain to the judge that he had already signed his "IADA Act" waiver. Appellant testified he refused to sign the waiver in the absence of any information as to how it might affect the waiver he had signed in May 2014. **RR3** 11-13.

After Appellant testified, the State sought to introduce business records, namely, records pertaining to "Interstate Act on Detainers and Extradition cases" handled by the Commonwealth's Attorney's Office for the City of Alexandria,

13

Virginia.[3] Trial counsel objected to the inclusion of one paragraph contained in the second page of the exhibit, a cover letter from Deputy Commonwealth's Attorney Evans, dated April 8, 2015, and addressed to "Strategic Prosecution, Travis County District Attorney's Office," to-wit:

> I have never received any request from Leonard Barker to return him, via Interstate Act of Detainer or through any waiver of Extradition to Virginia. Furthermore, I searched the local court records to verify that no such documents were filed or sent to the Court or Clerk of Court. The contents of the court papers are identified by the document lists for each case number enclosed herein.

Trial counsel asked for this portion to be redacted from the State's exhibit, on the basis that it violated Appellant's rights under the Confrontation Clause of the Sixth Amendment of the United States Constitution. Trial counsel specifically noted he was unable to cross-examine Deputy Commonwealth's Attorney Evans. The magistrate presiding over the hearing questioned whether the rights afforded by the Confrontation Clause applied to the instant hearing, and the exhibit was admitted in its entirety, with the objection on Confrontation Clause grounds to be held under advisement. **RR3** 13-17; **RR4** SX # 3.

After both sides concluded producing evidence, trial counsel made two arguments before the trial court. First, trial counsel maintained that Appellant had

---

[3] As reproduced in the Reporter's Record, this exhibit contains a second page, which is a photocopy of the reverse of the seal found on the first page, the business records affidavit by Deputy Commonwealth's Attorney Cathryn F. Evans. The second page of the actual exhibit itself is a cover letter from Deputy Commonwealth's Attorney Evans, dated April 8, 2015, addressed to "Strategic Prosecution, Travis County District Attorney's Office," and directed to the attention of Nicole Waggoner. *See* **RR4** SX # 3.

executed an Interstate Agreement on Detainers Act request for Virginia to resolve his holds within 180 days of the request, and that by operation of Tex. Code Crim.Proc. § 51.14, Article III(e), this also constituted his consent to be delivered to Virginia authorities. Trial counsel further argued that pursuant to Tex. Code Crim.Proc. § 51.14, Article V(c), the hold would have ceased to have any force or effect once the applicable 180-day period had expired. Trial counsel argued that by the time the Governor's Warrant was issued, Appellant was no longer a "fugitive." **RR3** 17-18.

In the alternative, trial counsel argued that once Appellant was notified of the detainer on October 21, 2014, there began a 90-day deadline for Virginia to take custody of Appellant, by operation of Tex. Code Crim.Proc. §§ 51.05, 51.07, and 51.13, Sec. 15 and Sec. 17. Trial counsel argued that Appellant's continued detention beyond 90 days after October 21, 2014, was illegal, citing *Lanz v. State*, 815 S.W.2d 252 (Tex.App.—El Paso 1991, no pet.). **RR3** 18-20; **RR4** SX # 3.

The presiding magistrate received clarification that Appellant was still serving sentence on his Travis County case at the time of October 21, 2014. The magistrate maintained that the applicable 90-day period would not be triggered until a defendant was "free and clear here in Texas, or whatever the local jurisdiction is." Regarding trial counsel's position regarding the Interstate Agreement on Detainers issue, the magistrate found "that it does not appear that

15

the Commonwealth of Virginia ever received his request, and therefore that [applicable 180-day] period would not have run." The magistrate announced he would recommend that Appellant's writ be denied and overruled trial counsel's grounds for objection. **RR3** 20-3. On May 4, 2015, the magistrate submitted his written "Findings and Recommendations of Magistrate, which were approved on the same date by the trial court. **CR1** 51-2. Appellant filed timely notice of appeal. **CR1** 49. This appeal follows from the denial of habeas relief.

## Summary of Arguments

The trial court abused its discretion by denying Appellant's request for relief by way of an application for writ of habeas corpus. First, by executing a request pursuant to the Interstate Agreement on Detainers Act, Appellant was no longer a "fugitive" at the time the Governor's Warrant was issued, because he had thereby given his consent to the production of his body in the courts of the Commonwealth of Virginia. By the time the Governor's Warrant was issued, Appellant's continued detention was illegal. In the alternative, by virtue of this same consent to the production of his body in the courts of the Commonwealth of Virginia, Appellant was entitled to a discharge from custody as of January 19, 2015, as his continued detention at that time became illegal pursuant to Tex. Code Crim.Proc. §§ 51.05, 51.07, and 51.13, Sec. 15 and Sec. 17.

## Issue Number One
### The trial court abused its discretion by denying Appellant's application for writ of habeas corpus, because Appellant was not a "fugitive" at the time of the issuance of the Governor's Warrant.

Clause 2 of Article IV, Section 2 of the United States Constitution establishes the basis for extradition of fugitives between states. The Extradition Clause is implemented by the Uniform Criminal Extradition Act, which has been adopted by Texas. *See* Tex. Code Crim.Proc. § 51.13; *Ex parte Potter*, 21 S.W.3d 290, 293 n.3 (Tex.Crim.App. 2000). In conducting an extradition hearing, a trial court in the asylum state may do no more than determine whether the requisites of the Uniform Criminal Extradition Act have been met. *New Mexico ex rel. Ortiz v. Reed*, 524 U.S. 151, 153-5 (1998); *California v. Superior Court of California*, 482 U.S. 400, 408 (1987). A governor's warrant that is regular on its face is prima facie evidence that the requirements for extradition have been met. *Ex parte Lekavich*, 145 S.W.3d 699, 701 (Tex.App.—Ft. Worth 2004, no pet.). Once the governor of an asylum state grants extradition, a court considering release on habeas corpus can consider only the following: (1) whether the extradition documents on their face are in order; (2) whether the petitioner has been charged with a crime in the demanding state; (3) whether the petitioner is the person named in the request for extradition; and (4) whether the petitioner is a fugitive. *Michigan v. Doran*, 439 U.S. 282, 289 (1978); *State ex rel. Holmes v. Klevenhagen*, 819 S.W.2d 539, 542-3 (Tex.Crim.App. 1991); *Lekavich*, 145 S.W.3d at 700. Once the governor's warrant,

17

regular on its face, is introduced into evidence, the burden shifts to the accused to show the warrant was not legally issued, was not based on proper authority, or contains inaccurate recitals. *Ex parte Cain*, 592 S.W.2d 359, 362 (Tex.Crim.App. 1980); *Ibarra v. State*, 961 S.W.2d 415, 417 (Tex.App.—Houston [1st Dist.] 1997, no pet.).

The only appropriate vehicle for challenging arrest pursuant to a governor's extradition warrant is through the filing of an application for writ of habeas corpus. *Ex parte Chapman*, 601 S.W.2d 380, 382-3 (Tex.Crim.App. 1980). A petitioner may contest his extradition in a writ of habeas corpus on the basis of any of the four issues identified by the Supreme Court in *Doran*. *Ex parte Sanchez*, 642 S.W.2d 809, 811 (Tex.Crim.App. 1982). The petitioner bears the burden to prove he is entitled to the relief he seeks by a preponderance of the evidence. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex.Crim.App. 2006). "A prima facie case can be defeated or supported by the supporting papers introduced, regardless of which party may have offered the supporting papers into evidence." *Cain*, 592 S.W.2d at 362, *citing Ex parte Lancaster*, 501 S.W.2d 904 (Tex.Crim.App. 1973); *Ex parte Brown*, 450 S.W.2d 647 (Tex.Crim.App. 1970).

The trial court's ruling on a writ of habeas corpus is subject to review for abuse of discretion. *Kniatt*, 206 S.W.3d at 664; *Washington v. State*, 326 S.W.3d 701, 704 (Tex.App.—Houston [1st Dist.] 2010, no pet.). In conducting this review,

18

the facts are viewed in the light most favorable to the trial court's ruling. *See Kniatt*, 206 S.W.3d at 664; *Washington*, 326 S.W.3d at 704. If the documents from the demanding state do not meet the requirements of the Uniform Criminal Extradition Act, the warrant should not issue and the applicant is entitled to a discharge. *Sanchez*, 642 S.W.2d at 811.

Appellant contests the notion that he was a "fugitive" at the time of the issuance of the Governor's Warrant. It is undisputed that Appellant tried to effect a request for final disposition of his Virginia charges in May 2014, while he was incarcerated in Texas, by way of forms that were clearly produced, printed, and promulgated by the Texas Department of Criminal Justice, no less. **RR2** 6-17; **RR3** 6-13; **RR4** DX # 1-2. Of course, as the learned magistrate was well aware, prevailing authorities hold that the 180-day time period under Article III(a) of the Interstate Agreement on Detainers does not begin until a prisoner's request for final disposition of charges against him has actually been delivered to the court and the prosecuting authority of the jurisdiction that lodged the detainer against him. **RR3** 22. *See Fex v. Michigan*, 507 U.S. 43, 51-2 (1993); *United States v. Henson*, 945 F.2d 430, 434 (1st Cir. 1991); *Morganfield v. State*, 919 S.W.2d 731, 734 (Tex.App.—San Antonio 1996, no pet.); *Bryant v. State*, 819 S.W.2d 927, 930-1 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd). However, the question of whether or not the proper authorities in Virginia received Appellant's request is

clearly a matter that must be settled in the Commonwealth of Virginia, not in Texas.[4] Further, "[t]he courts of the asylum state are 'without authority to consider equitable issues.'" *Ex parte Sanchez*, 987 S.W.2d 951, 953 (Tex.App.—Austin 1999, pet. ref'd, untimely filed), *citing Klevenhagen*, 819 S.W.2d at 543; *Doran*, 439 U.S. at 289. Appellant would argue that in the present context, consideration of this particular issue is a "red herring" that has no meaningful bearing on the actual issue at hand.

"The Uniform Criminal Extradition Act does not formally define 'fugitive.'" *Sanchez*, 987 S.W.2d at 952, *citing* Tex. Code Crim.Proc. 51.13, Sec. 1. "A working definition is found, however, in section two of the act, which provides, '[I]t is the duty of the Governor of this State to have arrested and delivered up to the Executive Authority of any other State of the United States any person charged in that State with treason, felony, or other crime, who has fled from justice and is found in this State.'" *Sanchez*, 987 S.W.2d at 952, *citing* Tex. Code Crim.Proc. 51.13, Sec. 2. *See also Ex parte Robertson*, 151 Tex. Crim. 635, 636-7, 210 S.W.2d 593, 594 (1948): "[I]f a person was present in the demanding state at the time it is alleged an offense was committed and leaves that state thereafter for any

---

[4] Appellant had argued before the magistrate that by operation of his request for final disposition, the Virginia detainer no longer had effect after the applicable 180-day period. **RR3** 18. Appellant does not advance this same argument in the present appeal, but this should be in no way construed as a waiver of the right to litigate this issue at the appropriate time and in the proper forum, namely, the Commonwealth of Virginia.

reason, whether connected with the alleged offense or not, and is found in the sending state, he is a fugitive from justice and subject as such to extradition."

That said, when a prisoner makes a request for final disposition of a charge in another jurisdiction pursuant to the Interstate Agreement on Detainers, the effect is twofold. First, a properly executed request triggers a 180-day deadline for the jurisdiction in which the charge is pending. In essence, the charge must be resolved within that timeframe, or else the charge must be dismissed with prejudice. Tex. Code Crim.Proc. § 51.14, Article III(a), (d). The request serves an additional purpose, however, which is spelled out by Tex. Code Crim.Proc. § 51.14, Article III(e) (emphasis supplied):

> Any request for final disposition made by a prisoner pursuant to Paragraph (a) hereof shall also be deemed to be a waiver of extradition with respect to any charge or proceeding contemplated thereby or included therein by reason of Paragraph (d) hereof, and a waiver of extradition to the receiving state to serve any sentence there imposed upon him after completion of his term of imprisonment in the sending state. **The request for final disposition shall also constitute a consent by the prisoner to the production of his body in any court where his presence may be required in order to effectuate the purposes of this agreement and a further consent voluntarily to be returned to the original place of imprisonment in accordance with the provisions of this agreement.** Nothing in this paragraph shall prevent the imposition of a concurrent sentence if otherwise permitted by law.

There is no requirement set forth in the statute—and there is no authority to be found in caselaw, either—to support the proposition that this "consent by the

prisoner to the production of his body" becomes effective only after the requesting state has received the request for final disposition.

"Status as a fugitive is not essential to extradition. Although not within the strict definition of a 'fugitive,' one who commits an act in one state intentionally resulting in crime in another state and who thus seeks to abate the administration of justice in the state where the offense was perpetrated is, in essence, a 'fugitive' from justice of such state for extradition purposes." *Ex parte Harrison*, 568 S.W.2d 339, 344 (Tex.Crim.App. 1978), *citing State of Kansas v. Holeb*, 188 Neb. 319, 196 N.W.2d 387 (1972). While Appellant obviously met this description when he was first apprehended in Travis County on December 2, 2013, the present record reflects, without dispute, that he thereafter proactively sought to facilitate—not abate—the administration of justice in the Commonwealth of Virginia.

From the present record on appeal, it is impossible to gather the reason or reasons why the proper authorities in the Commonwealth claim to have never received Appellant's request for final disposition. **RR4** SX # 3, p. 2 (cover letter from Deputy Commonwealth's Attorney Evans, dated April 8, 2015). Potential sources of the miscommunication might very well involve official misconduct, reckless ineptitude, a plain and simple act of unintentional human negligence, an act of God or accident, or a combination thereof. Measuring the degree of blame—if any—to be assigned to the State of Texas, the Commonwealth of Virginia, or the

United States Postal Service, however, is immaterial to the issue at hand. What can be determined from the record is that Appellant had given consent for the production of his body—per Tex. Code Crim.Proc. § 51.14, Article III(e)—as of May 20, 2014. The Governor's Warrant issued 262 days after Appellant transmitted through Texas authorities his consent for the production of his body in the Commonwealth. **RR4** SX # 2; **CR1** 8-28. November 16, 2014 would have marked 180 days since the State of Texas became aware of Appellant's consent for production of his body in the Commonwealth of Virginia. Appellant's State Jail Felony sentence arising from the Travis County charge expired on December 1, 2014. **CR1** 30-1, 39, 42.

Appellant had given his consent for the production of his body to the Commonwealth of Virginia. He had not granted consent for any further delay. *Compare Young v. Mabry*, 471 F.Supp. 553 (E.D. Ark. 1978), *aff'd*, 596 F.2d 339 (8th Cir.), *cert. denied*, 444 U.S. 853 (1979). At the time of the issuance of the Governor's Warrant on February 6, 2015, under the particular circumstances presented by the instant cause, Appellant's continued detention was illegal, and he no longer constituted a "fugitive." Appellant has met his burden and proven by a preponderance of the evidence that he was entitled to relief. Since Appellant was no longer a "fugitive," the documents from the demanding state failed to meet the requirements of the Uniform Criminal Extradition Act, and Appellant was entitled

to a discharge. *Sanchez*, 642 S.W.2d at 811. The trial court abused its discretion by finding that Appellant "remained within the definition of a fugitive." **CR1** 51. The judgment of the trial court should be reversed, and Appellant should be granted an immediate discharge from custody.

## Issue Number Two
**The trial court abused its discretion by denying Appellant's application for writ of habeas corpus, because Appellant was entitled to release from custody as of January 19, 2015.**

In addition to the argument presented above in Issue Number One, there remains an additional and alternative basis in support of Appellant's entitlement to habeas relief. The evidence is uncontroverted that Appellant was brought before a magistrate or judge in Walker County on October 21, 2014, whereupon he was notified in person regarding the detainer placed by the Commonwealth of Virginia. **RR2** 14-17; **RR3** 11-13. The dictates of Tex. Code Crim.Proc. § 51.05 are clear (emphasis supplied): "One arrested under the provisions of this title **shall not be committed or held to bail for a longer time than ninety days**." *See also*, Tex. Code Crim.Proc. § 51.07 (emphasis supplied): "A fugitive not arrested under a warrant from the Governor of this State before the expiration of ninety days from the day of his commitment or the date of the bail **shall be discharged**." *See also*, Tex. Code Crim.Proc. § 51.13, Sec. 15 and Sec. 17.

As stated above, Appellant's State Jail Felony sentence arising from the Travis County charge expired on December 1, 2014. **CR1** 30-1, 39, 42. January 19,

2015, marked the 90th day after he appeared before the magistrate in Walker County. Under the present argument, Appellant's continued detention became illegal as of January 19, 2015, if not in fact sooner, owing to the rationale set forth in Issue Number One, *above*. Appellant would argue that the 90-day deadline was not applicable with reference to his December 5, 2013 magistration in Travis County—*see* **RR2** 6-7—as he still had charges pending in that jurisdiction at the time. While Appellant was still in custody on the sentence received out of Travis County as of October 21, 2014, he had by that time not only resolved the charge, but he had additionally provided consent for the production of his body in the Commonwealth of Virginia as of May 20, 2014, as discussed in Issue Number One, *above*.[5] The Governor's Warrant was not timely served prior to the expiration of the applicable deadline of January 19, 2015. Appellant was entitled to a discharge from continued illegal detention at that time. *See Lanz v. State*, 815 S.W.2d 252, 253-4 (Tex.App.—El Paso 1991, no pet.). By virtue of the consent for the production of his body that he had provided to Texas authorities on May 20, 2014, it was an abuse of discretion for the trial court to find that the 90-day period did not begin until Appellant satisfied his sentence out of Travis County on December 1, 2014. **CR1** 51. The judgment of the trial court should be reversed, and Appellant should be granted an immediate discharge from custody.

---

[5] Appellant would presently incorporate by reference the arguments presented in Issue Number One*, above*, for the purposes of the present argument advance in Issue Number Two.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, for the reasons stated above, Appellant prays that this Court find the judgment of the trial court to have been in error, and that this Court reverse the judgment of the trial court and order the immediate discharge of Appellant. Appellant prays for any and all other general relief to which he may be entitled.

Respectfully submitted,

__/s/ Paul M. Evans_____
Paul M. Evans
811 Nueces Street
Austin, Texas 78701
(512) 569-1418
(512) 692-8002 FAX
SBN 24038885
paulmatthewevans@hotmail.com

26

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Appellant's Brief was delivered by e-service facsimile to the office of the District Attorney of Travis County—mailing address P.O. Box 1748, Austin, TX 78767, physical address 509 W. 11th Street, Austin, TX 78701—on the 2nd day of October, 2015.

\_\_\_/s/ Paul M. Evans_____

Paul M. Evans

## CERTIFICATE OF COMPLIANCE

Relying on the Microsoft Word 97-2003 Document word count utility, I hereby certify that the present document contains 4,908 words, counting all contents specifically delineated for inclusion in the applicable word count under Tex. Rule App. Proc. § 9.4(i)(1).

\_\_\_/s/ Paul M. Evans_____

Paul M. Evans